MANUEL P. FISHER, Respondent, v. DAVID GOLLADAY, Appellant.

Kansas City Court of Appeals, December 2, 1889.

*Rehearing denied, January 6, 1890.*

1. **Negligence**: SELLING SULPHURIC ACID FOR SULPHURIC ETHER: FAILURE TO LABEL: PLEADING: INSTRUCTION. Where the *gravamen* of the petition against a druggist is a negligent sale of sulphuric acid on an application to purchase sulphuric ether, yet the petition

does allege that said drug was delivered, without labeling the same, or putting any mark or fixing on said bottle anything to indicate the nature or character of its contents, or that it contained any poisonous substance, it is not error for the trial court to instruct the jury that it would constitute negligence on the part of the defendant to sell sulphuric acid without labeling the bottle in which it is contained, etc., with the words sulphuric acid and the word ", poison," and that it was wholly immaterial whether plaintiff's agent called for sulphuric ether or sulphuric acid (there being a conflict of evidence on that question).

2.  ———— : ———— : ———— : PRINCIPAL AND AGENT.  In the absence of a statute, it would seem to be negligence to sell one, not the immediate consumer, poison without labeling it, so that all might be warned of its fatal character; but since the statute commands such observance there is no escape from the rule, and though defendant may have informed plaintiff's agent of the nature of the drug, it will not relieve defendant of responsibility for the use by plaintiff; and the law of agency can play no part in such case so as to relieve defendant from his duty to the public and the law.

3.  ———— : CONTRIBUTORY NEGLIGENCE : INSTRUCTION AS TO.  An instruction set out in the opinion as to contributory negligence is approved, and it is *held* that certain suspicions aroused in plaintiff by mixing the drug with glycerine and alcohol, were not sufficient, under the circumstances of this case to warrant a declaration that they amounted to contributory negligence as matter of law.

*Appeal from the Johnson Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

AFFIRMED.

*S. P. Sparks*, for the appellant.

(1)  The *gravamen* of the petition was for a negligent sale of sulphuric acid on application to purchase sulphuric ether.  The court submitted a case for negligently failing to label sulphuric acid.  This was error. *Brown v. Railroad*, 80 Mo. 460; *Glass v. Gelvin*, 80 Mo. 297; *Bank v. Armstrong*, 62 Mo. 59; *Paint & Color Co. v. Conlon,* 92 Mo. 221.  (*a*)  A party can only recover on the case he makes in his pleading.  *Moffat v. Conklin,* 35 Mo. 453; *Railroad v. Stark,* 38 Mich.

714; *Vanhooser v. Berghoff*, 90 Mo. 487 (*loc. cit.* 498); Cooley on Torts, p. 160, note 1. (*b*) Plaintiff, in causing the jury to be instructed: "It is wholly immaterial whether Cowardine called for sulphuric ether or sulpuric acid," wholly abandoned his petition. This was reversible error for that reason, though the instruction upon a proper case may have been correct law. See authorities, *supra*. (2) Plaintiff's first instruction was further erroneous in declaring certain controverted facts conclusively established by the testimony, and that a failure to label was conclusive evidence of negligence. *Turner v. Lober*, 34 Mo. 461; *Kramer v. Mason*, 96 Mo. 559; *Knupple v. Ice Co.*, 85 N. Y. 488. There was testimony by young Golladay that he cautioned Cowardine as to the dangerous properties of the acid at the time of the sale. The instruction ignored this. (3) Where there is no dispute concerning the facts constituting the contributory negligence relied upon as a defense, it becomes a question for the court, and defendant's demurrer to plaintiff's case should have been sustained. *Powell v. Railroad*, 76 Mo. 80; *Norton v. Ittner*, 56 Mo. 331; *Lenix v. Railroad*, 76 Mo. 91; *Henry v. Railroad*, 76 Mo. 288; 2 Thomp. Neg., pp. 1149, 1173; 2 Thompson on Trials, secs. 1674, 1675, 1680. The verdict as to the defense of contributory negligence was contrary to law as declared in the first instruction of defendant; but one inference could be drawn from plaintiff's uncontradicted story. 2 Thomp. Neg., p. 1209, and cases, *supra*. (4) Conceding the application of the compound caused the alleged injury, if Cowardine called for sulphuric acid his negligence was the proximate cause, and the casual connection between it and the alleged injury was not broken by defendant's failure to label, and the court erred in declaring such act immaterial. Wharton Neg., sec. 134; *Jackson v. Railroad*, 87 Mo. 422. (5) If defendant's clerk informed the purchaser of the corrosive properties of the acid,

the failure of defendant to label did not constitute actionable negligence, and the refusal of the fourth and sixth of defendant's instructions submitting this issue was error. *Wohlfahrt v. Beckert*, 92 N. Y. 490. (6) Knowledge of the privity between plaintiff and Cowardine, as well as the intended use of the drug by a person other than him, and the use contemplated, was essential to fix liability of defendant to plaintiff. *Lampert v. Gas Co.*, 14 Mo. App. 376; *Davidson v. Nichols*, 11 Allen, 574; *Winterbottom v. Wright*, 10 Mees. & Wellsby, 109. This case is clearly distinguishable from *Thomas v. Winchester*, 6 N. Y. App. (2 Selden) 397.

*Orr & McLinn* and *O. L. Houts*, for the respondent.

(1) This constituted a cause of action under the laws of this state. The material inquiry was, not what plaintiff may have called for, but did the defendant negligently retail, dispense, or sell, or deliver plaintiff a poison to his injury ? It is this that the statute undertakes to regulate and prevent. Laws of Missouri, Acts 1881, p. 132, sec. 9, p. 130, sec. 2; *Davis v. Guarnieri*, 45 Ohio St. 470; s. c., 4 A. St. Rep. 548; *Brunswig v. White*, 8 S. W. Rep. [Tex.] 85; *Davis v. Guarnieri*, 15 N. E. Rep. [Ohio] 350; *Thomas v. Winchester*, 6 N. Y. App. [2 Sugdew] 397; *Loop v. Litchfield*, 46 N. Y. 351; *Fleet v. Hollenkemp*, 13 B. Monr. 219. (2) The allegation that plaintiff called for sulphuric ether was mere inducement and immaterial; the petition contained sufficient allegations to make a cause of action. These only were plaintiff required to prove, and not all the facts alleged. *Morrow v. Suber*, 97 Mo. 155. It appeared from the undisputed evidence in this case, that the defendant sold and delivered to plaintiff, through his agent, a bottle of sulphuric acid, a mineral poison, without labeling or in any way marking it

"sulphuric acid," or "poison," and without ascertaining upon inquiry that plaintiff or his agent was aware of the poisonous character of the same. *Estwin v. Railroad*, 96 Mo. 290; *Schlereth v. Railroad*, 96 Mo. 509; *Johnson v. Railroad*, 77 Mo. 546. (4) Plaintiff's second instruction correctly stated the rule as to measure of damages in the state. *Russell v. Columbia*, 74 Mo. 480. The instructions given by the court taken together then fairly presented all the issues of facts in controversy to the jury, conceding that the question of contributory negligence is in this case. *Daugherty v. Railroad*, 97 Mo. 647; *Owens v. Railroad*, 95 Mo. 169.

ELLISON, J.—The following is the material portion of the petition in this cause:

"Plaintiff states that, on or about the thirty-first day of December, 1887, he was suffering from temporary derangement of the organs of hearing of the left ear, and at said date, and long prior thereto, the defendant was engaged in business, in the town of Holden, county of Johnson and state of Missouri, as a druggist and pharmacist, and kept a stock of drugs and medicines; and whose business it was, and is, to compound, sell and retail medicines and drugs for medical purposes. And, at the date first aforesaid, plaintiff, by and through one W. A. Cowardine, applied to said defendant at his store and place of business, for the purchase of one ounce of sulphuric ether, to be used in and about the healing and curing of said derangement of the head and ear of plaintiff.

"And that defendant, by his agent and employe, in the person of his son, Maurice Golladay, did undertake to furnish the plaintiff, by and through the agency of the said W. A. Cowardine, the said sulphuric ether, but instead thereof, did carelessly, negligently and unskilfully furnish plaintiff, through the medium aforesaid, sulphuric acid, which last-mentioned is a poison, and which was wholly unfit for the uses and purposes for

which plaintiff desired to use the sulphuric ether; and that said sulphuric acid was not only unsuited to the healing and curing of plaintiff's malady, but was destructive and dangerous to his health and life; and that defendant, by and through the agency of his said son and employe, did represent to plaintiff, through the agency of the said Cowardine, that he had put up and given to him one ounce of sulphuric ether, as called for; and that said sulphuric acid was put up by defendant aforesaid in a small vial, or bottle, and delivered to said Cowardine for plaintiff, without labeling the same, or or putting any mark, or fixing upon said bottle anything to indicate to plaintiff, or any one else, the nature or character of its contents, or that it contained any poisonous substance; but supposed and believed it contained sulphuric ether, as called for by plaintiff, and represented by defendant, in the manner aforesaid; and that plaintiff, so relying upon said representation, and believing the contents of said bottle to be sulphuric ether, and not being able to discover or detect its true contents, and, in ignorance thereof, did, on or about the first day of January, 1888, use and apply the same to his left ear, with the intention, purpose and expectation of curing his said malady, of which he was complaining, and, as a result of the use and application of a portion of the contents of said vial, or bottle, containing said acid, plaintiff was poisoned," etc.

The testimony of Cowardine was that he asked for sulphuric ether. On the contrary, the testimony of defendant's clerk, who made the sale, was that Cowardine asked for sulphuric acid, and that he gave it to him in a bottle, wrapped in paper, stating, as he handed it to him: "Hold the bottle this way, so it wont touch the cork; if it touches the cork and eats it, and gets on your clothes, it will eat them."

It is conceded that there was no label put on the bottle or wrapper, containing the name of the drug, or

the word "poison," as is required by Laws, 1881, section 9, page 132.

The court instructed the jury, on behalf of the plaintiff, that it would constitute negligence, on the part of the defendant, to sell sulphuric acid without labeling the bottle, in which it is contained, and also the outside wrapper or cover, with the words sulphuric acid and the word "poison," and that it was wholly immaterial whether Cowardine called for sulphuric ether or sulphuric acid.

I. The first objection urged by defendant is that the *gravamen* of the petition being for a negligent sale of sulphuric acid, on an application to purchase sulphuric ether, the court, by plaintiff's instruction, submitted a case to the jury for negligently failing to label sulphuric acid. A point much the same was made in the case of *Davis v. Guarnieri*, 46 Ohio St. 470. It was there urged that the trial court erred in commenting to the jury on the statute making it a criminal offense to sell a poisonous drug without labeling. Upon that question counsel insisted that the whole of this matter was foreign to the issues. That there was no negligence of such character charged in the petition. That the issue was, whether Guarnieri called for the sweet oil of almonds and was carelessly sold the bitter oil of almonds,—that that was the entire charge of negligence, and that therefore it was of no consequence whether the bottle containing the drug was properly labeled or not. To this argument the court replied that "It is true that this fact is not stated in the petition. It is also true that the substantive wrongful act, of which the plaintiff complained, was not the omission properly to label a poisonous drug, as the statute requires. The wrongful act complained of—the act which led to the injury—was carelessly selling and delivering to the plaintiff a deadly poison instead of the harmless medicine he called for. The contention of counsel presupposes that no act of

negligence can be proved except it be alleged in the petition. This position is untenable. The allegation in a pleading that the party, complained against, negligently committed the particular act which led to the injury, whose redress is sought, furnished the predicate for the proof of all such incidental facts and circumstances, both of omission and commission, as fairly tend to establish the negligence of the primary fact complained of. This rule of pleading is abundantly established by authority. *Ware v. Gay*, 11 Pick. 106; *McCauley v. Davidson*, 10 Minn. 418; *Clark v. Railroad*, 15 Fed. Rep. 588; *Grinde v. Railroad*, 42 Iowa, 376; *Indianapolis Ry. Co. v. Keeley*, 23 Ind. 133.''

The case before us is stronger than the Ohio case, for plaintiff does allege here what the plaintiff in that case omitted, that is, that defendant did not label the drug which he delivered to Cowardine. We shall rule the point against the defendant.

II.   So, it being conceded that sulphuric acid is one of the classes of drugs and poisons mentioned in the statute, *supra*, we are of the opinion that the court properly instructed the jury that the omission to label it constituted negligence *per se*, and that it was not material whether Cowardine called for acid or ether.

Speaking for myself, I should consider it negligence, *in the absence of a statute*, for a dealer in drugs to sell to one, not the immediate consumer, a deadly poison without labeling it, so that those who might get hold of it would be warned of its fatal character. It was doubtless a recognition of the great liability for such a drug to work fatal harm that induced the legislature to affix a penalty to an act so liable to evil results. It is a duty owed to the public on the part of such dealers, aside from the command of the law. *Davis v. Guarnieri*, 46 Ohio St. 491, 492. But since the lawmakers have seen fit to direct the observance of this precaution, and prescribe a penalty for its violation,

we can see no escape from the rule as declared by the circuit court. *Karle v. Railroad*, 55 Mo. 476; *Bowman v. Railroad*, 85 Mo. 533; *Backenstoe v. Railroad*, 23 Mo. App. 148.

III. Defendant's testimony tended to show that the clerk informed Cowardine that the drugs would eat the cork and his clothing, and, from this, it is zealously contended that defendant is not liable for the use to which plaintiff afterward put it. Now, while this statement from the clerk did not amount to information, to one unversed in such matters, that the drug was a poison, yet we may concede it was sufficient to put Cowardine upon inquiry, and still the point will not avail defendant. It is probably true, that if a druggist was to furnish a purchaser with poison for *immediate personal* use and consumption, telling him, if he did not know, at the time of delivery, what it was and of its poisonous character, that the mere neglect to label would not subject the seller to either civil or criminal liability. In such case the druggist would administer the drug himself. But we need not hunt about for instances in which the druggist would be excused. In the case at bar the drug was not to be used immediately, or by the actual purchaser. It was for another, and time was to intervene between the sale and consumption. In other words, the dangerous matter was to go beyond the sight, supervision and control of the seller. It should never do so without carrying with it an announcement of its character, so that it may not be used unwittingly by any one. So, notwithstanding the clerk may have informed Cowardine of the nature of the drug or have told him it was poison, it will not relieve defendant of responsibility for the use by plaintiff. No question of agency between Cowardine and plaintiff in this respect can arise. The fact, that Cowardine was plaintiff's agent for the purchase, can in no manner relieve defendant of the duty he owed to the

· public, and to the law. This is not a case in which the law of agency plays a part. It stands on different ground, and is governed by different considerations.

The case of *Thomas v. Winchester*, 2 Selden, 397, was for damages caused by negligently putting up, labeling and selling as for the extract of *dandelion*, which is a harmless medicine, a jar of the extract of *belladonna*, which is a deadly poison, by means of which the plaintiff to whom a dose of dandelion was prescribed by a physician was injured. The defendant was held, though the original package had, after leaving defendant's hands, passed through several intermediate agencies, and was sold to plaintiff by an innocent retailer. It is said in that case that a dealer in drugs and medicines, who carelessly labels a deadly poison as a harmless medicine, and sends it so labeled into the market, is liable to all persons, who, without fault on their part, are injured by using it as such medicine in consequence of the false label. "The liability of the dealer in such cases arises, not out of any contract or direct privity between him and the person injured, but out of the duty which the law imposes upon him to avoid acts, in their nature, dangerous to the lives of others."

It will be observed in that case that there was a false label, yet the ruling made is good authority in this case. Plaintiff sent for sulphuric ether, a harmless drug, and received from defendant an unlabeled drug, which he quite naturally supposed was what he sent for, but which turned out to be a poison. Defendant's furnishing the unlabeled acid was the same, under the circumstances, as if he had labeled it the drug plaintiff sent for. And, though defendant's testimony is, that acid was called for, yet he did not so label it. If he had observed the dictates of the most ordinary prudence, to say nothing of the law, and labeled the drug, plaintiff would have discovered the mistake, whether

on the part of the clerk or Cowardine, and, if he did not, he would have had nothing but his own careless-ness to charge with his misfortune.

Defendant places much reliance on the case of *Wohlfahrt v. Beckert*, 92 N. Y. 490, in which state there is a statute similar to ours, but we think it not applicable to the facts here.   In that case, there was testimony showing that the plaintiff's intestate went to defendant's drug store and said to him, "I wish to buy black drops."    Defendant said, "For what do you wish black drops?"   The reply was, "I want it for cramps in my stomach."   Defendant said, "Why, that is poison, I would advise you to take cholera drops for your sickness."  He replied, "No, I want black drops." "Well," said defendant, "that is a poison, and you cannot take more that ten or twelve drops of that med-icine for a dose."    "Yes," said Wohlfahrt.   Wohlfahrt was then given two drachms of the medicine, in a phial, labeled "black drops."   The quantity to be taken at a dose was not written, nor was the word "poison," or other thing, written on the label to indicate its poisonous character.

Upon his return home his wife took the medicine, poured it into a little glass and gave it to him; he took all of it except a few drops, and died within a few hours. It was held that, if the jury believed such state of facts to have existed, the defendant was not liable.   But that statement of facts will not apply here in vital particu-lars.   In that case, the purchaser was the consumer, and he was given full knowledge of the character of the medicine, and what would be a dose.   With this knowledge, he deliberately took enough to produce fatal results.   If the above statement was true, he either did not believe the druggist, or deliberately committed suicide.

In the case at bar, as has been before stated, the sale was not to the consumer.   The plaintiff applied the

drug without knowing its deadly character, believing it to be the harmless medicine he had sent for. In that case, there was actual fault and negligence on the part of the purchaser; in this case, there was no fault or negligence on the part of the plaintiff, except as it may be imputed to him by the act of Cowardine, on the theory of agency, and such theory has no application in a case of this nature.

But, even in the case cited, it deserves consideration, whether, if the label of "poison," which the law required, had been put upon the bottle, the wife, who administered the medicine, might not have declined or made inquiry, and thus saved her husband's life.

IV. At defendant's instance the court submitted the question of contributory negligence, to the jury, in as liberal a manner as could be reasonably asked. The jury were instructed that, notwithstanding defendant's neglect to label, and that plaintiff was ignorant of the drug being acid, yet, that if he, before the application to his ear, became possessed of knowledge, or any facts, which would put an ordinary prudent man on inquiry as to the character of the drug, and, nevertheless, used it, he was guilty of contributory negligence, and could not recover. This was as much as defendant ought to ask. It was doubtless based on plaintiff's evidence as to the action of the drug, when mixed with glycerine and alcohol. He said it made the bottle warm, and that it felt hot when he put it in his ear. This was not enough to show contributory negligence, as a matter of law. The circumstances must be considered. Plaintiff had no skill, as a pharmacist, or knowledge of the character or action of medicine when compounded. He had known defendant, as a druggist, fifteen years, and dealt with him as such, and had a right to rely upon him; and, though the medicine, when mixed with other ingredients, may have appeared queer or suspicious to him, yet it could not be said, as a matter of

law, that he was guilty of negligence in subjecting his suspicion to his faith in the care and accuracy of the druggist. The question was properly left with the jury.

There were some other points presented by counsel, but which, after consideration, we think, are not sufficient to authorize us to disturb the action of the circuit court.

The judgment, with the concurrence of the other judges, is affirmed.

*Rehearing denied, January 6, 1890.*