ALBERT KEARSE, Respondent, v. W. P. SEYB et al., Appellant.

Kansas City Court of Appeals, January 27, 1919.

1. **NEGLIGENCE: Oil Broker: Kerosene: Ultimate Consumer: Explosion: Proximate Cause.** An oil broker in Missouri sold to an oil company in that State a car of kerosene. The oil company sold a large quantity of it to a retail merchant and the latter sold one gallon to a customer who undertook to star a fire by pouring some of it over kindling. The oil was not all kerosene but was largely gasoline and an explosion killed the purchaser. It was *held* that the negligence of the original vendor (the oil broker) was the proximate cause of the explosion.

2. ———: **Oil Inherently Dangerous: Vendor: Remote Purchaser: Proximate Cause.** Where an original vendor, or manufacturer, sells an article inherently dangerous which he knows is to be used by the public, without proper label, or other mode of warning, and his vendee sells to another and the latter distributes among consumers, such consumers may maintain an action in tort against the original vendor.

3. **OIL: Statutory Inspection: Ultimate Consumer.** Where a statute requires inflamable oils to be inspected when sold in this State, such statute is intended to protect, among others, the ultimate consumer and he may hold liable the original vendor of such oil who fails to inspect, for personal injuries resulting from an explosion.

Appeal from Schuyler Circuit Court.—*Hon. N. M. Pettingill*, Judge.

AFFIRMED.

*Alden, Latham & Young, Fogle & Fogle* and *Charles Martin* for appellants.

*Higbee & Mills* for respondent.

ELLISON, P. J.—Plaintiff as surviving husband brought this action for damages resulting from the death of his wife caused by an explosion of gasoline charged to have occurred through the negligence of defendants. He recovered judgment in the circuit court for $7500.

He and his wife, resided in Lancaster, Missouri. On Sunday morning November 4, 1917, the deceased was at home alone with her three small children. She desired to start a fire in the furnace and sent one of the children with a two gallon can to a store kept by Martin for a gallon of kerosene. The child told Martin her errand and he drew into her can from a large vessel the gallon of oil supposed to be kerosene. She returned home with the oil and deceased took it to the basement. Evidence tended to show that deceased attempted to use some of the oil in starting a fire. An explosion followed whereby she was so badly burned that she died in a few hours.

Defendants, Anderson & Gustafson, are wholesale jobbers in oils at Chicago, Illinois, with a branch office at Kansas City, Missouri. Defendant, ''The independent Oil and Merchandise Company'' is a Missouri Corporation at Kahoka with a branch office at Lancaster, Mo. Defendant Seyb is the manager of the latter company at Lancaster. The storekeeper Martin was not sued. Defendants Anderson & Gustafson alone appeal. The case presented involves a question of negligence of the latter parties, and that is to be solved by the following facts.

There was an institution in El Dorado, Kansas, known as the ''Midland Refining Company'' and defendants Anderson & Gustafson had bought several cars of kerosene from it, among others was car ''M D R K 509,'' and this, according to statement of the Midland Company, had been shipped to them over the Santa Fe R. R. The Midland Company forwarded a bill of lading for it to the latter firm. At this time the president of the Independent Company went to the Kansas City office of Anderson & Gustafson to buy a tank car of kerosene. The manager at that office informed him that they had a car ''M D R K 509'' then in Kansas City, and he sold the car to the Independent Company. He reported the sale to the Chicago office and that office ordered the Santa Fe railroad to divert the car M. D. R. K. 509, to the Independent Company at Lancaster, Missouri, over the C. B. & Q. R. R. Co., and that was done; and defendants Anderson & Gustafson wrote the Independent Company that car M. D. R. K. 509, containing kerosene had left Kansas City for Lancaster on the C. B. & Q. R. R. at 7:30 A. M. October 26th. In order to effect the diversion Anderson & Gustafson surrendered to the Santa Fe R. R. the bill of lading covering this car issued by that railroad and secured an ''exchange bill of lading'' from them as consignors to the Independent Company as consignee which bill likewise described the car as ''M. D. R. K. 509,'' containing kerosene. The car was taken to Lancaster by the C. B. & Q. R. R. and delivered (with written invoice describing

the car sold) to defendant Seyb, who we have already stated, was agent at that place for the Independent Company. Seyb then sold ninety-eight gallons out of this car as kerosene oil to Martin the storekeeper and put it in the latter's tank. Shortly thereafter, as we have said, Martin sold a gallon of it to plaintiff's child for her mother and the tragedy followed. Neither of the defendants inspected the oil. Martin sold small quantities to other customers at his store and there was evidence tending to show that defendant Seyb became aware that the oil was at least partly gasoline.

In behalf of defendant there was evidence tending to prove that in point of fact car M. D. R. K. 509 was not filled with kerosene, and it was never in fact, shipped to Anderson & Gustafson from El Dorado, Kansas. On the contrary that car was placed on a side track of the Santa Fe R. R., El Dorado, where it remained several days. At this time the Midland Company of El Dorado received an order from an oil refining company in Illinois for a car of gasoline and this order was filled by shipping to that company from El Dorado, via Kansas City, this car M. D. R. K. 509 marked "Gasoline, Inflammable." The Santa Fe R. R. agent at El Dorado made out a new way bill for the car and cancelled the old one, but the bill of lading to Anderson & Gustafson was not recalled and no notice was given to them and they did not know that the car of kerosene which they sold to the Independent Company had never been shipped from Kansas when they sold it to the Independent Company.

When the car got to Kansas City the Santa Fe R. R. agent had received his order to divert it to the Independent Company at Lancaster and seeing that the description "car M. D. R. K. 509," was the same as that in his order, he diverted the car of gasoline intended for the oil company in Illinois to the Independent company at Lancaster. In that way occurred the mistake resulting so disastrously to plaintiff's wife.

By the provisions of our oil inspection statute, as amended and reenacted in Laws of 1913, page 373, sec-

tions 6836, 6838b, it was the duty of Anderson & Gustafson to have inspected the car of oil they sold to the Independent company before allowing it to be delivered to that company. If they had inspected it before forwarding to the Independent company at Lancaster, they would have discovered it was not kerosene. By not inspecting they set in motion a cause which led directly to distribution among a community of consumers.

The inspection statute (Sec. 6836) just cited, requires kerosene and other oils sold in this State, to be inspected and the evidence in plaintiff's behalf discloses that the car sold by Anderson and Gustafson was then in Kansas City. The sale was therefore covered by the statute. We note that counsel seek to qualify the statement as to the place of sale. But unquestionably the statement made by Anderson & Gustafson's manager to the president of the Independent company was a statement that the car was in Kansas City ready for immediate shipment and intended to be so understood. The evidence showed that cars from the Santa Fe were brought into Missouri and then delivered to the C. B. & Q. and other roads.

Wisely enough plaintiff has bottomed his right of action in tort for negligence of the defendants; and naturally defendants seek to escape that character of action. The case would be much simplified if it were stated as in contract, but the sum of liability would be much less; and the right of action would not embrace the number of defendants included within the present judgment.

Defendants Anderson & Gustafson have cited authority to the effect that when a vendor sells to a vendee who in turn sells to another the last cannot hold the first in damages for the tort, since the first vendor is only the remote cause, the proximate cause being the act of the last vendor. But when the article sold by the first vendor *is inherently dangerous and harmful* and he must have known it was for the ultimate purpose of retailing to the public any one of the latter who may be injured will have the right to claim that the original

vendor owed him a duty, the violation of which would create liability. [Pierce Oil Co. v. Deselms, 212 U. S. 159, 177-179; Stowell v. Standard Oil Co., 139 Mich. 18, 25; Clement v. Crosby & Co., 148 Mich. 293; Standard Oil Co. v. Parrish, 145 Fed. 829.] This distinction is fully recognized and commented upon in Heiser v. Mfg. Co., 110 Mo. 605, 612-617, and finds apt illustration in wholesale pharmacists who sell poisons carelessly labelled, or not labelled at all. [Fisher v. Golladay, 38 Mo. App. 531; Thomas v. Winchester, 6 N. Y. 397.]

So if a sale of an article is prohibited by law unless it be first inspected, the remote vendor who violates the statute is answerable to the ultimate consumer, since the statute is held to be intended for the protection of the latter. [Stowell v. Standard Oil Co., supra, 25; Fisher v. Golladay, 38 Mo. App. 531.]

We have noted the singular state of facts which defendants Anderson & Gustafson have brought out as execusatory of them in letting a car of gasoline, intended by the Midland Company for a purchaser in Illinois, be substituted for a car of kerosene intended for the Independent Company at Lancaster, Missouri. But all that should not exculpate them. In the first place, they sold the kerosene as then in Kansas City. It was their duty to know it was there. Next they wrote to the Independent Company at Lancaster that the car of kerosene they sold to it had left Kansas City for Lancaster and bills of lading were forwarded to the latter company at Lancaster. It was the duty of Anderson & Gustafson to know whether that was true; and this could easily have been ascertained had they undertaken the duty of inspection which the statute placed upon them.

Referring to the matter of contributory negligence by the deceased, we find that there was no plea of that nature. But on the theory that there was evidence in plaintiff's behalf which tended to show deceased was guilty of such negligence in attempting to start a fire with kerosene, each party submitted the question to the jury and the finding has been against defendants.

In some of the foregoing authorities it is stated that that manner of starting a fire was so common as that courts would take judicial notice of it. But we need only say that it is at least a question for the jury. [See, also, Standard Oil Co. v. Reagan, 84 S. E. 69.]

We find no substantial merit in the objections to the instructions for plaintiff. No. 1, properly submits plaintiff's case. If the matters submitted therein were found to be the facts, then it was right to direct a verdict on those facts. It was not reversible error to assume in No. 2 that defendants Anderson and Gustafson sold oil in a tank car. The face of the record shows that to be true. There is no objection to No. 4, the omission of the word "wife" in the last line was palpably a clerical error and not misleading.

That refused instructions offered by defendants were properly refused, is shown by the foregoing considerations relative to defendant's liability.

The verdict of $7500 cannot be said to be excessive. The amount in the Waters Pierce Oil Company case supra, was nearly twice that amount, and in other cases cited by plaintiff much larger sums were upheld.

We find no reversible error in the remark of the court as to starting fire with kerosene. However the point is not before us, since it was not saved in the motion for new trial. We find no error and hence affirm the judgment. All concur.