### Gatliff Coal Company v. Hohlman.

(Decided March 10, 1914.)

### Appeal from Whitley Circuit Court.

1. Explosives—Negligence—Degree of Care Required.—Where defendant sold gasolene to a number of persons believing it to be coal oil, it was the duty of defendant to use the highest degree of care usually exercised by ordinarily prudent men, under like or similar circumstances, to apprise the purchasers of the mistake.

2. Negligence—Action for Personal Injuries—Evidence—Peremptory.—In an action by plaintiff to recover damages for injuries sustained as a result of the negligence of defendant in selling him gasolene instead of coal oil, to be used for lighting purposes, and in failing, after the discovery of the mistake, to exercise proper care to apprise him thereof, evidence examined, and held sufficient to take the case to the jury and to sustain a verdict in favor of plaintiff.

J. N. SHARP for appellant.

R. S. ROSE and R. L. POPE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages against defendant, Gatliff Coal Compnay, plaintiff, J. L. Hohlman, recovered a verdict and judgment for $500. Defendant appeals.

The facts are as follows:

Defendant operates a coal mine in Whitley County, Kentucky. In connection with the mine it operates a store or commissary, from which goods are sold to the miners. It also owns a large number of cottages and a few boarding houses which it rents to the miners. Plaintiff, Hohlman, occupied one of these boarding houses. It was located within less than a quarter of a mile of the commissary.

Shortly before the accident to plaintiff, defendant's mining department ordered a barrel of gasolene for use in its mine. It was the custom for the gasolene to be shipped in barrels branded with red labels. Coal oil was shipped in like barrels, but not so branded. When the barrel ordered by the mining department was received at the railroad depot it did not have on it the gasolene brand. The mining department, believing it to be coal oil, refused to receive it. Thereafter the agent for the railroad notified the manager of the commissary department that he had on hand a barrel of coal oil, and asked him if he could not use it. Being in need of coal oil, the manager received the barrel from the agent. On being received it was emptied into the coal oil tank and sold as coal oil. After making several sales, the commissary department discovered the mistake. The manager sent messengers to various parts of the camp for the purpose of notifying the purchasers of the mistake. He also notified such patrons as thereafter came into the store. No notice was given to the plaintiff. The mistake was discovered about four o'clock in the afternoon of the day preceding the accident. Among those who purchased some of the gasolene for coal oil was the plaintiff, Hohlman. The purchase was made by his little girl. She brought the gasolene home in a half-gallon can. Next morning plaintiff got up to make a fire. After starting the fire, he found there was no oil in one of his lamps. Placing the lamp on the hearth, he went into the kitchen and got the oil can containing the gasolene. Taking the top off the lamp he turned up the oil can. The can was full and the oil wouldn't run. Unscrewing the top of the can, he turned it up. Just as he did so, the gasolene took fire, and plaintiff was badly burned about the hands and arms.

Defendant contends that there was no negligence on its part. In this connection it is argued that the mining department, having reason to believe that the barrel contained coal oil, declined to receive it; that the commissary department, having reason to believe that the barrel contained coal oil, did receive it, and placed its contents in the coal oil tank. When that department discovered the mistake, it tried in every way to notify its patrons. Under these circumstances, it is insisted that the vendor of the gasolene, who failed to label the barrel in the proper way, is alone responsible. For these reasons the defendant claims a peremptory should have been given in its favor. These facts, however, bear principally on the question of whether defendant knew, or by the exercise of ordinary care, could have known, that it was selling gasolene for coal oil. Passing this phase of the case, the evidence shows conclusively that the mistake was discovered about four o'clock p. m. on the day preceding the accident. Upon its discovery the manager told his clerks to try to recall the names of all purchasers, and sent messengers out to notify them. To what extent this order was carried out does not satisfactorily appear.

It is certain that plaintiff, who occupied a large boarding house in sight of the commissary, was not notified. Gasolene is highly inflammable and explosive. Its use in lamps for lighting purposes would necessarily subject every purchaser to great danger. In view of this fact, it was the duty of the defendant to use the highest degree of care usually exercised by ordinarily prudent men under like or similar circumstances, to apprise the purchasers of the mistake. Everybody in the camp could have been notified within a space of two or three hours. Plaintiff was a purchaser, and though his house was within less than a quarter of a mile of the commissary, no one in his household was notified of the mistake. Under these circumstances, we cannot say as a matter of law that defendant, after discovering the mistake, exercised proper care to inform purchasers that they had purchased gasolene instead of coal oil for lighting purposes. On the contrary, the evidence was not only sufficient to take the case to the jury, but to sustain the verdict.

No other errors are relied on.

Judgment affirmed.