**McLAMB v. E. I. DU PONT DE NEMOURS & CO.**

No. 3943.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1935.

H. Edmund Rodgers, of Wilmington, N. C. (Rodgers & Rodgers, of Wilmington, N. C., on the brief), for appellant.

George Rountree, of Wilmington, N. C. (C. M. Spargo and Abel Klaw, both of Wilmington, Del., and Rountree & Rountree, of Wilmington, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Willie Joe McLamb, the plaintiff in the District Court, seeks to recover dam-

ages in this suit against E. I. Du Pont De Nemours & Co., for personal injuries suffered by him in an explosion of dynamite which occurred on December 12, 1933, during the dredging of the Inland Waterway near Little River, S. C., by the United States government. A hard stratum of land and rock had been encountered in this vicinity, which impeded the progress of the work, and the United States Army engineer in charge requested the Du Pont Company to send experts to examine the ground and advise him as to the desirability of using explosives. The assistant manager of the company at Birmingham, Ala., and his assistant responded, and after an examination, it was concluded that explosives would greatly facilitate the work, and so the army engineer purchased an emergency supply of dynamite and advertised for bids for the large supply that would be needed.

The officer in charge of the government dredge employed a number of laborers, including the plaintiff, to make up a gang for the explosion work. They had not had any previous experience in blasting or in the use of dynamite, and the two Du Pont experts, at the request of the engineer, undertook to instruct the men and advised them in the handling and use of the explosive, and the men were told to follow the instructions so given. The experts determined the location of the holes, the amount of the charges, and the time of setting them off, and the work proceeded under their observation and instruction, according to the plaintiff's testimony, until the accident took place. Although the army engineer conferred with the experts as to the advisability of using an explosive, and as to the manner in which it should be handled by the men, he retained control of the whole enterprise, and was free at any time to accept or reject the tendered advice. As a matter of fact, he accepted the advice to use dynamite, and did not alter the methods which at his request the experts advised and directed the workmen to adopt.

The blasting proceeded for seven or eight days before the accident occurred. During the latter part of this period, the experts went to Charleston, S. C., to represent their employer at the opening of bids for the sale of dynamite to the government. The Du Pont Company was the successful bidder.

The cause of the accident was not disclosed, but it is conceded by the plaintiff that there was no evidence of negligence or lack of care at any time on the part of the agents of the defendant company. In this situation, the District Judge directed a verdict for the defendant.

The plaintiff bases his suit on the theory that in the eye of the law he became a servant of the Du Pont Company when the representatives of that company were entrusted with the direction of the work of using the explosives, notwithstanding the fact that he was employed and paid by the United States to do the work; and so it is contended that the rule should be applied that one who uses an intrinsically dangerous substance, such as dynamite, has an absolute liability, irrespective of negligence, for any damage to person or property that ensues; and that the plaintiff, not having been furnished a safe place to work, has a right of action against his employer. See Exner v. Sherman Power Const. Co. (C. C. A.) 54 F.(2d) 510, 80 A. L. R. 681.

It is of course true that "one may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation." Standard Oil Company v. Anderson, 212 U. S. 215, 220, 29 S. Ct. 252, 253, 53 L. Ed. 480. This is what the plaintiff claims took place in his case. However, this is but one aspect of the situation. The alternatives are presented in the following passage from the same authority, 212 U. S. 215, at page 221, 29 S. Ct. 252, 254, 53 L. Ed. 480: "It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration,

shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking."

 The question is whether, under the facts of the pending case, it is correct to say that the Du Pont Company furnished its employees to the United States and placed them under its control in the performance of the work; or whether, on the other hand, the company undertook to do the work through its own servants, retaining direction and control over them. Obviously this question cannot be answered, as the plaintiff seeks to do, by pointing out that the army engineer, after deciding to use explosives, authorized the Du Pont representatives to tell the laborers what they should do, and how they should do it, for a superintendent or foreman usually has this authority over laborers and yet does not become thereby an independent contractor; nor do the laborers cease to be servants of their common employer. The determining factors here are that the work was the work of the United States, and that control over it was never relinquished by the army engineer in charge. As was said in Singer Mfg. Co. v. Rahn, 132 U. S. 518, 523, 10 S. Ct. 175, 176, 33 L. Ed. 440: "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done.'"

█ 5] Viewed in this light, it is clear that the laborers did not become the servants of the Du Pont Company, but the experts furnished by that company became for the time being the servants of the United States. It is true that the engineer sought and obtained the advice of the Du Pont Company as to whether explosives should be used; but the final decision in the matter was made by him. Likewise, the instruction and direction of the men in the use of the dangerous substance was left to the experts; but the control of the undertaking was never relinquished by the United States. The engineer at any time could have withdrawn the laborers and abandoned the use of explosives, or could have changed the methods employed. The fact that he refrained from interfering does not indicate a lack of power on his part; nor does the fact that the Du Pont Company furnished the experts, doubtless with the hope and expectation of selling its products to the United States, indicate that it had assumed control of the dredging operation, or become responsible for its results. The mere sale of explosives does not impose on the seller a liability for injuries resulting from the use thereof in the absence of negligence on his part. Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; Hercules Powder Co. v. Calcote, 161 Miss. 860, 138 So. 583. The facts of the case constitute a clear example of the sort often before the courts in which one person puts his servant at the disposal of another for the performance of a particular service for the latter, whereupon the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former, so that the latter, and not the former, is liable for the servant's torts. See Linstead v. Chesapeake & O. Ry. Co., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453; Denton v. Yazoo & M. V. R. Co., 284 U. S. 305, 52 S. Ct. 141, 76 L. Ed. 310; Norfolk & W. Ry. Co. v. Hall (C. C. A.) 57 F.(2d) 1004.

The plaintiff labors under the handicap of the well-recognized rule that the United States is not liable for the torts of its agents, and he concedes that even if he were able to show that the officers were at fault in this case, he would

have no right of action against the government; but of course this circumstance gives him no right to claim damages from the Du Pont Company, and the judgment of the District Court must therefore be affirmed.