SHEILA MANGUM STEGALL, ADMINISTRATRIX OF THE ESTATE OF COY LEE STEGALL v. CATAWBA OIL COMPANY OF N. C.; SHELL OIL COMPANY AND ROY BROOME.

(Filed 20 November 1963.)

**1. Pleadings § 12—**

A demurrer admits the truth of all factual averments contained in the amended complaint and such relevant inferences as may be reasonably drawn therefrom, liberally construing the pleadings with a view to substantial justice between the parties, but the demurrer does not admit inferences or conclusions of law. G.S. 1-151.

**2. Evidence § 3—**

The court will take judicial notice that gasoline, either alone or mixed with kerosene, constitutes a flammable commodity and a highly explosive agent.

**3. Negligence § 4—**

The basic duty to use ordinary or reasonable care under the circumstances requires a person handling an inherently dangerous instrumentality to use increased caution commensurate with the exceptional danger.

**4. Same; Sales § 16—**

The manufacturer and the distributor of an inherently dangerous chattel, with actual or constructive knowledge of the danger, are under duty to give warning of such danger to persons for whose use the commodity is supplied when the manufacturer or distributor has reason to believe that they would not realize such danger, so that injury to them is reasonably forseeable in the absence of such warning.

5. **Same— Complaint held insufficient to state cause of action against manufacturer for fatal injury in explosion of fuel.**

Allegations to the effect that the manufacturer sold to a wholesaler or distributor a mixture of kerosene and gasoline or a mixture of kerosene and other highly flammable fuel with flash point below the minimum set by G.S. 119-16.1, but without allegation that it sold such mixture as standard kerosene, or that the manufacturer had either actual or constructive knowledge that the mixture was delivered to a retailer by the wholesaler and put in an underground tank used by the retailer solely for the storage of kerosene, is *held* insufficient to state a cause of action against the manufacturer for the death of a person fatally injured in an explosion resulting when he used the mixture as kerosene in attempting to start a fire.

6. **Same— Complaint held insufficient to state cause of action against distributor for fatal injury in explosion of fuel.**

Allegations to the effect that a distributor delivered to a retailer a mixture of kerosene and gasoline, or a mixture of kerosene and other highly flammable fuel with flash point below the minimum set by G.S. 119-16.1, and that the distributor put the fuel in an underground tank used by the retailer solely for the storage of kerosene, but without allegation that the distributor knew, or in the exercise of due care should have known, that the fuel was other than standard kerosene, is *held* insufficient to state a cause of action against the distributor for the death of a person fatally injured in an explosion resulting when he used the mixture as kerosene in attempting to start a fire.

7. **Pleadings § 19—**

Upon sustaining a demurrer for failure of the complaint to allege the facts essential to plaintiff's cause of action, plaintiff may move to amend. G.S. 1-131.

APPEAL by plaintiff from *Johnston, J.,* May 1963 Mixed Session of UNION.

Civil action to recover damages for the alleged wrongful death of plaintiff's intestate, heard upon separate demurrers filed to the amended complaint by defendants Catawba Oil Company of North Carolina and Shell Oil Company.

From a judgment sustaining the separate demurrer of each oil company, plaintiff appeals.

*J. Max Thomas for plaintiff appellant.*

*Smith & Griffin by C. Frank Griffin and Richardson & Dawkins by O. L. Richardson for defendant appellees Catawba Oil Company of N. C. and Shell Oil Company.*

PARKER, J.   This is a summary of the crucial allegations of the amended complaint:

In April 1961 defendant Roy Broome was operating a country store and service station on N. C. Highway #205 about seven miles north of

Marshville, where he sold, *inter alia,* kerosene and regular and premium gasoline which were solely sold and delivered to him by Catawba Oil Company of North Carolina, hereafter called Catawba. The underground storage tanks and pumps at Broome's store and service station were owned and maintained by Catawba. Shell Oil Company, hereafter designated as Shell, was, and is, the sole supplier of kerosene and regular and premium gasoline delivered to Catawba.

A few days before 20 April 1963 Pernay Stegall, father of plaintiff's intestate Coy Lee Stegall, bought from Broome's store and service station three gallons of fuel represented by an employee of Broome there as being kerosene. This fuel was pumped by this employee from an underground storage tank used for the storage of kerosene only into an empty five-gallon can brought to Broome's store and service station by Pernay Stegall. This can had never contained any substance other than kerosene. Pernay Stegall carried the can and the fuel poured therein to his home to be used by persons residing there to start fires. At that time Coy Lee Stegall and his family were residing in Pernay Stegall's home as members of the household.

On the evening of 20 April 1961, plaintiff requested her intestate Coy Lee Stegall, who was her husband, to start a fire in a wood stove to heat the house. The stove had had no fire in it that day. After placing several pieces of wood in the stove, he lighted a piece of paper and put the burning paper in the stove. He then took the five-gallon can containing the fuel purchased from Broome's store and service station by Pernay Stegall and started pouring some of the fuel therein into the stove. The fuel in the can exploded, blowing the entire bottom out of the can and throwing burning fuel over his body causing first, second, and third degree burns from his face to his shoe tops, and resulting in his death the following day.

The fuel which was sold to and represented to Pernay Stegall by an employee of defendant Broome as kerosene was not in fact kerosene as defined by the statutes of the State of North Carolina, but was in fact a highly combustible fuel with a flash point far below the minimum set by the statutes of the State of North Carolina, and contained a high percentage of gasoline or other highly explosive substance.

Plaintiff alleges on information and belief that Catawba negligently and unlawfully sold and delivered to defendant Broome the defective fuel or mixture, which was ultimately used by her intestate and proximately caused his death; that defendant Broome negligently and unlawfully sold to Pernay Stegall the defective fuel ultimately used by her intestate contrary to the statutes of the State of North Carolina, and particularly G.S. 119-34; that Shell was the sole supplier of pe-

troleum products to Catawba, and delivered to it regular and premium gasoline and kerosene or a mixture of both.

The separate acts of negligence of all the defendants concurring together proximately caused the explosion and her intestate's death, and for such death she prays for a recovery of damages from the defendants, severally and jointly.

Shell demurred to the amended complaint on the ground that it does not allege facts sufficient to constitute a cause of action against it, in that no facts are alleged to show that Shell was negligent in any respect. Catawba filed a substantially similar demurrer to the amended complaint.

The court entered one judgment sustaining both demurrers on the grounds specified in the demurrers.

Catawba and Shell, in the joint brief they have filed, state that they do each demur to the amended complaint on the further ground that it shows affirmatively on its face that plaintiff's intestate was clearly guilty of contributory negligence.

G.S. 1-151 requires that the allegations of the amended complaint, challenged by the demurrers here, shall be liberally construed by us with a view to substantial justice between the parties. *Lynn v. Clark*, 254 N.C. 460, 119 S.E. 2d 187. It is a trite aphorism that the demurrers here admit, for the purpose of testing the sufficiency of the amended complaint, the truth of all factual averments therein well stated and such relevant inferences as may be reasonably drawn therefrom, but they do not admit any legal inferences or conclusions of law asserted by the pleader. *McKinney v. High Point*, 237 N.C. 66, 74 S.E. 2d 440.

We take judicial notice of the fact that gasoline either alone or mixed with kerosene constitutes a flammable commodity and a highly explosive agent. *McLawson v. Paragon Refining Co.*, 198 Mich. 222, 164 N.W. 668.

This is said in *Bradley v. Fowler*, 210 S.C. 231, 42 S.E. 2d 234: "The evidence showed, and it is a matter of general knowledge, that gasoline is highly volatile and gives off fumes and vapors which readily ignite when in the proximity of a flame, and at lower temperature or flash point than kerosene, and hence is more inflammable and explosive than is kerosene."

In respect to Shell we are confronted with the question of the liability of a manufacturer and seller to Catawba, a distributor or middleman, of an alleged defective commodity intrinsically dangerous to life and limb, to wit, a mixture of kerosene and gasoline, for the death of a third person, an ultimate consumer of such mixture purchased by his father, in whose house he lived, as kerosene from Broome, a retail

merchant, who purchased from Catawba, a distributor or middleman. We are also confronted with the liability of Catawba to the ultimate consumer under such circumstances.

It was the duty of Shell, the manufacturer and seller to Catawba, and of Catawba, the distributor or middleman and seller to Broome, to exercise a degree of care commensurate with the risk of injury from negligence, not to deliver for sale and use as standard kerosene, in lieu of standard kerosene, a mixture of kerosene and gasoline or a mixture of kerosene and other highly combustible fuel with a flash point below the minimum set by G.S. 119-16.1, "Kerosene Defined," which either knows, or, in the exercise of a degree of care commensurate with the risk of injury from negligence, should know, is not standard kerosene, but a more flammable commodity than standard kerosene and a highly explosive agent, and has no reason to believe that those for whose use the commodity is supplied as standard kerosene will realize it is not standard kerosene, but is a more flammable commodity than standard kerosene and a highly explosive agent, without apprising the purchaser of such fact. If either Shell or Catawba failed in the performance of such duty, it becomes responsible if injury or damage proximately results to another, who is free from contributory negligence, by reason of an explosion, when such more highly dangerously flammable and explosive commodity is used by the ultimate purchaser or a member of his household as and for standard kerosene. The liability does not arise out of contract or deceit, but is based upon the fundamental proposition that a negligent act, which was inherently dangerous to the life and safety of an ultimate consumer or a member of his household, has been done or permitted by him who is charged with the duty of exercising a degree of care commensurate with the risk of injury from negligence. One who puts on the market articles inherently or intrinsically dangerous to life and limb owes the duty of due care to all those persons who ought reasonably to have been foreseen as likely to use them. And such an article is a mixture of gasoline and kerosene to be sold as standard kerosene. *Ramsey v. Oil Co.*, 186 N.C. 739, 120 S.E. 331; *Waters-Pierce Oil Co. v. Deselms*, 212 U.S. 159, 53 L. Ed. 453; *Merchants' Bank v. Sherman*, 215 Ala. 370, 110 So. 805; *Gatliff Coal Co. v. Hohlman*, 157 Ky. 778, 164 S.W. 76; *Kentucky Independent Oil Co. v. Schnitzler*, 208 Ky. 507, 271 S.W. 570, 39 A. L. R. 979; *McLawson v. Paragon Refining Co., supra; Kearse v. Seyb*, 200 Mo. A. 645, 209 S.W. 635; *Fleming v. Arkansas Fuel Oil Co.*, 231 S.C. 42, 97 S.E. 2d 76; *Gulf Refining Co. v. Jinright*, 10 F. 2d 306; Exhaustive Annotation 80 A. L. R. 2d 488-590, entitled "Liability of manufacturer or seller for injury caused by firearms, explosives and flammables."

The duty of ordinary or reasonable care under the circumstances lies at the foundation of the law of negligence. It is a legal truism that this principle of law generally comprehends a duty to warn of danger, the nonperformance of which will, when it is the proximate cause of injury, give rise to liability. Consequently, a manufacturer or seller of a product, which to his actual or constructive knowledge involves danger to users has a duty to give warning of such dangers. Annotation 76 A. L. R. 2d p. 16 *et seq.*, where cases are cited from a large number of jurisdictions.

This Court in *Wyatt v. Equipment Co.*, 253 N.C. 355, 117 S.E. 2d 21, states the same principle of law, quoting from Restatement, Torts, § 388:

> " 'One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so'."

The only allegations of fact in the amended complaint as to Shell are to the effect that at all times complained of Shell was the sole supplier of petroleum products to Catawba, and delivered to it, among other products, regular and premium gasoline and kerosene or a mixture of the same. Admitting, for the purpose of the demurrer filed by Shell, that the above factual averments are true, there is no allegation of fact in the amended complaint that Shell sold such a mixture to Catawba as standard kerosene to be used as standard kerosene, or that Shell sold to Catawba as standard kerosene a fluid to be used as standard kerosene that did not meet the requirements of the definition of kerosene as set forth in G.S. 119-16.1. If Catawba did put in an underground tank owned and maintained by it at Broome's store and service station for the storage of standard kerosene a mixture of gasoline and kerosene or a mixture of kerosene and other highly explosive substance to be sold and used as standard kerosene, there is no allegation of fact to the effect that Shell had either actual or constructive knowledge of it, or participated in it in any way.

STEGALL *v.* OIL CO.

G.S. 119-34 states: "The retail dealer shall be held responsible for the quality of the petroleum products he sells or offers for sale," and contains a proviso not relevant on this appeal. Plaintiff in her brief states, G.S. 119-34 "places the responsibility upon the retailer for the quality of the product sold." Shell is not a retail dealer here, and this statute has no application to it. The same is true as to Catawba.

The Court said in *Shives v. Sample,* 238 N.C. 724, 79 S.E. 2d 193: "In an action or defense based upon negligence, it is not sufficient to allege the mere happening of an event of an injurious nature and call it negligence on the part of the party sought to be charged. This is necessarily so because negligence is not a fact in itself, but is the legal result of certain facts. Therefore, the facts which constitute the negligence charged and also the facts which establish such negligence as the proximate cause, or as one of the proximate causes, of the injury must be alleged."

It is our opinion, and we so hold, the amended complaint alleges no facts which show negligence, or facts which would permit a fair inference to be reasonably drawn therefrom of negligence, on the part of Shell as the proximate cause, or as one of the proximate causes, of the death of plaintiff's intestate. The mere sale and delivery of a mixture of kerosene and gasoline by Shell to Catawba does not impose on Shell a liability for the death of plaintiff's intestate here resulting from the use thereof in the absence of any negligence on Shell's part. *McLamb v. E. I. DuPont De Nemours & Co.,* 79 F. 2d 966; *Wyllie v. Palmer,* 137 N.Y. 248, 33 N.E. 381, 19 L. R. A. 285; *Hercules Powder Co. v. Calcote,* 161 Miss. 860, 138 So. 583. Consequently, the trial court was correct in sustaining Shell's demurrer.

Conceding that Catawba's demurrer to the amended complaint admits, for the purpose of testing the sufficiency of the pleading, the truth of factual averments from which a fair inference can be reasonably drawn that Catawba put in an underground tank owned and maintained by it for standard kerosene only at Broome's store and service station not standard kerosene but, in lieu thereof, a mixture of gasoline and kerosene or a mixture of kerosene and other highly explosive substance, with a flash point far below the minimum set by G.S. 119-16.1, and that Catawba ought reasonably to have foreseen that ultimate purchasers of such commodity from Broome were likely to use such commodity as standard kerosene, yet the amended complaint contains no factual allegations to the effect that Catawba sold and delivered to Broome as standard kerosene what it knew, or, in the exercise of care commensurate with the risk of injury from negligence, should have known, was not standard kerosene but was a mixture of gasoline and

kerosene or a mixture of kerosene and other highly explosive substance, or that if it did have actual or constructive knowledge of such fact, it failed to notify Broome, the retailer.

Plaintiff contends that *Ramsey v. Oil Co.*, 186 N.C. 739, 120 S.E. 331, is authority for his contention that his allegations of fact are sufficient. With this contention we do not agree. An examination of the well-drafted complaint in the *Ramsey* case, on file in the office of the clerk of this Court, plainly shows a vast difference between the allegations there and in the instant case. The allegations of fact in the complaint in the *Ramsey* case are to this effect: One Len Henderson was a retail dealer of kerosene and general merchandise, and purchased his supplies of kerosene from the Standard Oil Company of New Jersey, hereafter called Standard Oil. During November and December 1922, Standard Oil knowing Henderson to be such a retailer negligently sold to him a large quantity of a very dangerous and explosive liquid, which was, as plaintiff is informed and believes, an unlawful mixture of gasoline and kerosene, for the purpose of being retailed as standard kerosene by Henderson in the regular course of his business to the public in that community for use as an illuminant and for kindling fires, according to the custom prevailing in that community, Standard Oil well knowing it to be the purpose of Henderson to retail said liquid as standard kerosene and to be so burned. Standard Oil well knew, or by the exercise of reasonable care should and would have known, that the admixture sold by it to Henderson for resale as kerosene was explosive and dangerous to life when so used. The complaint then alleges at length statutes of this State and rules and regulations of the Department of Agriculture, as authorized by statutes, in respect to the standards, rules and regulations in relation to petroleum products sold and delivered in this State, and particularly as to the flash test of illuminating oils, which shall not be less than 100 degrees Farenheit, as tested by the Elliott method, and avers that Standard Oil negligently violated these statutes, rules and regulations in its transactions with Henderson. The complaint then avers in substance that Standard Oil sold and delivered such admixture to Henderson as standard kerosene, the flash test of such admixture being greatly less than 100 degrees Farenheit, as tested by the Elliott method—closed cup—according to the directions prepared by the State Oil Chemist, and being a very dangerous and explosive liquid. Henderson, not knowing said mixture to be dangerous and explosive, on 18 December 1922 retailed a gallon thereof to plaintiff for use as an illuminant and to kindle fires. On 21 December 1922, at about 7:30 a.m., Carrie Lee Ramsey, mother of plaintiff's intestate Edna E. Ramsey, an eight-year-old child, was using

said admixture for kindling a fire in the kitchen stove, not knowing said admixture contained gasoline or that it was dangerous and explosive, and the admixture ignited and exploded and burned plaintiff's intestate, his eight-year-old daughter, which burns proximately caused her death. The *Ramsey* case was for the recovery of damages for the wrongful death of plaintiff's intestate, his eight-year-old daughter. In this explosion plaintiff's wife and his little son were horribly burned, and both died in a few hours after the explosion.

The opinion in the *Ramsey* case does not state the relation of plaintiff's intestate to plaintiff. In Annotation 80 A. L. R. 2d p. 505 and p. 525, it is erroneously stated that the *Ramsey* case was an action for the death of plaintiff's wife. A similar error appears in Michie's North Carolina Digest (1937), Vol. 9, p. 325.

Shell was the sole supplier of petroleum products to Catawba. The amended complaint does not allege sufficient facts to show actionable negligence, or facts which would permit a fair inference to be reasonably drawn of actionable negligence, on the part of Catawba to withstand the challenge of its demurrer. To repeat what we said before as to Shell, the mere sale and delivery of a mixture of kerosene and gasoline by Catawba to Broome does not impose on Catawba a liability for the death of plaintiff's intestate resulting from the use thereof in the absence of negligence on Catawba's part. To hold that actual or constructive knowledge of the danger of the mixture sold by Catawba is not a requisite to the duty to warn on its part, would make Catawba an insurer. The lower court properly sustained Catawba's demurrer.

The term "contributory negligence," *ex vi termini*, implies or presupposes negligence on defendant's part. *Owens v. Kelly*, 240 N.C. 770, 84 S.E. 2d 163. By reason of what we have said above, we do not reach the serious question as to whether on the face of the amended complaint itself contributory negligence on the part of plaintiff's intestate is so patent and unquestionable as to bar recovery by plaintiff. *Boykin v. Bennett*, 253 N.C. 725, 118 S.E. 2d 12.

The lower court properly sustained the demurrers of Shell and Catawba. This is without prejudice to plaintiff's right to move in the court below for leave to amend his amended complaint under the provisions of G.S. 1-131.

Affirmed.