DOUGLAS O. WILSON, PLAINTIFF v. E-Z FLO CHEMICAL COMPANY, A DIVISION OF GROWERS SERVICES CORPORATION, DEFENDANT AND THIRD PARTY PLAINTIFF

v.

UNIROYAL CHEMICAL, A DIVISION OF UNIROYAL, INCORPORATED, THIRD PARTY DEFENDANT

No. 119

(Filed 16 June 1972)

1. Sales §§ 17, 22— damage to squash crop — use of herbicide — liability of distributor

The trial court properly determined that the distributor of a pre-emergent herbicide, Alanap, was liable for damages to plaintiff's squash crop caused by use of the herbicide, where the evidence tended to show that plaintiff's squash crop was destroyed by use of the herbicide on March 20 while the weather was still cold, that defendant distributor had recommended the herbicide for immediate use, and that the distributor failed to give plaintiff the warning furnished by the manufacturer in its herbicide marketing manual against use of the product in early spring when the weather is wet and cold.

2. Sales § 17— damage to squash crop — use of herbicide — liability of manufacturer

The manufacturer of a pre-emergent herbicide is not liable upon its implied warranty of fitness for damages to plaintiff's squash crop caused by use of the herbicide on March 20 while the weather was still cold, where the manufacturer had warned the distributor against use of the herbicide in early spring when the weather is wet and cold, but the distributor failed to warn plaintiff of such limitation on use of the herbicide.

ON *certiorari* to the Court of Appeals to review its decision affirming the judgment, in favor of the plaintiff, entered at the April, 1971 Session, SAMPSON Superior Court. 13 N.C. App. 610, 186 S.E. 2d 679.

The plaintiff, Douglas O. Wilson, prior to and during the year 1969, operated a truck farm four miles from Clinton in Sampson County. On March 19, 1969, he completed the planting of yellow squash on eighteen and one-half acres of carefully prepared land. On that day he requested an agent of the defendant, E-Z Flo Chemical Company, a distributor in Clinton, to recommend and to supply a pre-emergent herbicide for control of weeds and grass on the eighteen and one-half acres just planted to squash. Mr. Daughtry, an agent for E-Z Flo with whom the plaintiff was well acquainted, delivered two drums of Alanap which he recommended for immediate use. Each drum contained thirty gallons of liquid Alanap with proper instructions on the drums as to water dilution and proper amount per acre. The treatment was applied on March 20, the day following the planting. There was no warning on the drums or transmitted orally or otherwise to the grower restricting the use of Alanap.

The plaintiff applied the chemical to his entire crop except four rows near the middle of the field. He offered ample testimony that all of the crop except the four rows was destroyed. However, the four rows on which Alanap was not applied produced a fine crop of squash. The evidence permitted a legitimate inference the use of Alanap so early in spring caused the plaintiff's loss. He brought suit against E-Z Flo Chemical Company for having sold and recommended the use of Alanap which destroyed his crop. He offered evidence of damages in the amount of $9,025.88.

E-Z Flo Chemical Company filed answer to plaintiff's complaint and a cross-action against Uniroyal Chemical alleging it sold the Alanap to plaintiff and delivered it in the sealed containers exactly as received from Uniroyal, the manufacturer. E-Z Flo alleged it was only a conduit for the manufacturer who was primarily liable and demanded that it have judgment over against Uniroyal indemnifying it in the amount it was required to pay the plaintiff.

Uniroyal answered alleging it sold the Alanap to E-Z Flo and delivered at the same time its "Herbicide Marketing Man-

ual 1969" which contained a detailed description of the quantity, uses, purposes, and dangers incident to the use of Alanap. The instructions contained the following: "Do not use ALANAP on vine crops of any kind when growing conditions are very adverse; namely in early spring when weather is cold and wet." The third party defendant contends that Alanap is harmful only in the unlikely situation where some grower used it before the growing season actually begins—a very unusual situation, but even so, it cautioned the distributor against such use.

Uniroyal as a further defense denied any express warranty and alleged: "That if the original plaintiff sustained any loss or damage to his squash crop in 1969, it was not due to any breach of warranty on the part of the third party defendant, but was caused solely by the sale of the product by the third party plaintiff to the original plaintiff, and its use by the original plaintiff contrary to the warnings and instructions given by the third party defendant in its books and information." The third party defendant alleged that any damage the plaintiff sustained resulted from the failure of E-Z Flo to advise the plaintiff of the danger incident to the use in spring when weather conditions were adverse.

At the trial the plaintiff testified he had no knowledge of the warnings against the use of Alanap except what appeared on the drums. The drums contained a recommendation as to the proper amount of chemical to be used per acre for squash. The plaintiff testified: "I had dealt with Mr. Daughtry and E-Z Flo . . . I had complete confidence in E-Z Flo Chemical Company and relied upon their recommendations." The grower did not order Alanap. He ordered something to kill weeds and grasses and E-Z Flo selected and delivered Alanap.

After the plaintiff discovered the damage to his crop, he notified E-Z Flo Chemical Company and Mr. Daughtry came to inspect the damage. Then for the first time E-Z Flo disclosed the manufacturer's warning against use when growing conditions were very adverse. The plaintiff did not see or know of the marketing manual or of any warning against the use of Alanap until a copy of the manual was shown him by Mr. Daughtry.

With respect to weather conditions, the grower testified: "I do not recollect whether or not heavy rains or cold weather

occurred within a short period of time after the application of Alanap." Two growers living nearby, however, testified that in 1969 the spring weather was normal. The parties stipulated the high and low temperatures for each day between March 20 and April 1, inclusive. On each of eight days during the period, the low temperature was in the thirties or below. On three days the temperature was below freezing. On March 23 the temperature was five degrees below freezing and on March 28 was four degrees below. There was neither stipulation nor evidence as to rainfall.

The parties waived a jury trial and consented that the judge find the facts, answer issues, and enter judgment. The court answered issues and entered judgment as follows:

"(a) Was the plaintiff damaged by the alleged breach of warranty on the part of the original defendant as set forth in the complaint?

ANSWER: 'Yes'.

"(b) What amount, if any, was the plaintiff damaged by the alleged breach of warranty on the part of the original defendant?

ANSWER: '$7,620.00'.

"(c) Is the third party defendant primarily liable to the plaintiff by virtue of a breach of warranty in its manufacture and distribution of a product known as liquid Alanap?

ANSWER: 'Yes'.

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff, Douglas O. Wilson, recover of the original defendant and third party plaintiff, E-Z Flo Chemical Company, Division of Growers Services Corporation, Seven Thousand Six Hundred Twenty Dollars ($7,620.00), and the costs of this action to be taxed by the Clerk; and it is

"FURTHER ORDERED, ADJUDGED AND DECREED that the original defendant and third party plaintiff, E-Z Flo Chemical Company, Division of Growers Services Corporation, recover of the third party defendant, Uniroyal Chemical, a Division of Uniroyal, Incorporated, the sum of Seven

Thousand Six Hundred Twenty Dollars ($7,620.00), together with sum taxed as costs in favor of the plaintiff, Douglas O. Wilson, against the original defendant and third party plaintiff; . . . "

After judgment was entered, E-Z Flo paid the plaintiff the amount of the award and Uniroyal appealed from the judgment decreeing that it repay E-Z Flo.

*Chambliss, Paderick & Warrick by Joseph B. Chambliss for Original defendant and Third Party Plaintiff.*

*Smith, Anderson, Blount & Mitchell by John L. Jernigan for Third Party Defendant.*

HIGGINS, Justice.

[1] The facts in this case are not in dispute. The evidence is free of any contradiction. The parties admit the plaintiff, a truck farmer, properly prepared his soil and on March 19, 1969, planted eighteen and one-half acres of squash. That day he consulted Mr. Daughtry, an agent of E-Z Flo, stating he needed a pre-emergent herbicide to kill weeds and grass and requested that Mr. Daughtry recommend and supply him with a chemical suitable for immediate use on yellow squash.

E-Z Flo Chemical Company was not an agent of Uniroyal, but carried Alanap and another herbicide in stock. Mr. Daughtry recommended Alanap and immediately delivered two thirty-gallon sealed drums to the plaintiff.

The grower opened the drums, followed directions as to the dilution with water, and on March 20 sprayed his entire crop with the exception of four rows near the middle of the field. The crop, except the four rows, turned out to be a total loss. The four rows produced a normal crop. The evidence points to Alanap as the culprit.

The evidence is undisputed that at the time the original defendant (present third party plaintiff) recommended and sold the Alanap, it had in its possession the third party defendant's sales and use manual which contained the following: "Do not use ALANAP on vine crops of any kind when growing conditions are very adverse; namely in early spring when weather is cold and wet." It seems obvious that had the plaintiff known of the warnings, he would not have purchased Alanap, even

though E-Z Flo recommended it, for use on the last day of winter. He knew in all probability there would be cold and wet weather conditions sometime after March 20. The warning was sufficient notice to those who saw it that Alanap should not be used in Piedmont, North Carolina, as early as March. According to the stipulations, on eight days in the ensuing two and one-half weeks the temperature was in the thirties or below. On three days it was below freezing.

The evidence indicates at the time of its use by the plaintiff, Alanap was a relatively new product. Obviously, any substance which is harmless to vine crops, but deadly as to grasses and weeds, must be treated with a degree of respect and used cautiously. Warning against use when weather is cold and wet should be heeded. In such weather it will turn killer on vine crops as well as on weeds and grasses. The dealer, E-Z Flo, recommended and sold without caution. It knew, or should have known, whether any warnings were placed by the manufacturer on the sealed containers. It knew, or should have known, that the warning as to the dangers of use in cold wet weather was not attached to the containers and, therefore, unknown to the grower. The dealer knew the Alanap was to be applied on March 20 and the grower was relying on the recommendation.

Actually, no one is able to tell with any degree of certainty what next week's weather will be, especially beginning on March 20. The common sense of the warning is this: Alanap should not be used on vine crops until the danger of cold wet weather is over. In no event is the danger over in Sampson County, North Carolina, until somewhat later than the last day of winter.

The grower did not select Alanap. He applied for a preemergent herbicide which would kill weeds and grasses, but would not harm squash. He accepted Alanap on the recommendation of E-Z Flo which knew of the dangers, but failed to acquaint the plaintiff with them.

The trial court properly concluded from the evidence that the grower is entitled to recover from E-Z Flo. The decision of the Court of Appeals as to E-Z Flo's liability to the plaintiff is affirmed. See *Branco Eastern Company v. Leffler*, (Colo.), 482 Pac. 2d 364.

[2] The stipulation and the evidence being free from contradiction, the conclusions to be drawn are matters of law. The conclusion of law from the evidence is that the distributor had ample notice of the warning which was a limitation (as between the manufacturer and the dealer) on the manufacturer's implied warranty of fitness. It knew the containers which it delivered did not disclose any warning of danger in the use of Alanap. At the same time it knew, or should have known, that Alanap would or might turn killer on vine crops, depending on the weather. As between the distributor who knew of the danger and failed to warn the grower, and the manufacturer who had amply warned the distributor of the danger, the primary liability must rest on the distributor.

The trial court and the Court of Appeals based decision on our cases which hold: "The supplier of a chattel (especially food or drink for human consumption) is subject to liability for injury in its use by another when the supplier knows, or should know, that its use is or is likely to be dangerous and when there is no reason to believe that the user will realize this, if, further, he (the supplier) fails to use reasonable care to warn." *Corprew v. Chemical Corp.*, 271 N.C. 485, 157 S.E. 2d 98. (Citing many cases.) The basis of liability on the part of the manufacturer and the distributor is the express warranty of fitness to the ultimate consumer appearing on the container, or the implied warranty when the product is supplied for a known use. *Simpson v. Oil Co.*, 217 N.C. 542, 8 S.E. 2d 813.

Where the retailer purchases personal property from the manufacturer or wholesaler for resale with implied or express warranty of fitness and the retailer resells to the consumer with the same warranty and the retailer has been compelled to pay for breach of warranty, he may recover his entire loss from the manufacturer. *Service Co. v. Sales Co.*, 261 N.C. 660, 136 S.E. 2d 56; G.S. 25-2-314-315. The foregoing rule is not applicable as between the manufacturer who warned and the distributor who has been warned, but fails to pass on the warning to the user. *E. I. Du Pont De Nemours & Co. v. Ladner*, 221 Mis. 378, 73 So. 2d 249.

This is not a case of the manufacturer's liability to the ultimate consumer. Here involved is the liability of the manufacturer who gave ample warning to the distributor who failed

to pass it on to the consumer. The distributor selected the product, unqualifiedly recommended it, and sold it for its immediate use (March 20). In the absence of express warranty on the part of the manufacturer, its implied warranty of limited fitness, as between the manufacturer and the distributor, placed the primary responsibility on the disitributor to notify the user of the limitation on fitness.

The manufacturer in this case serves a wide market area in which weather conditions vary greatly. To devise a weather warning suitable to all sections and attach it to each container would present some problem to the manufacturer. In this case Uniroyal attempted to solve the problem by issuing to the distributor a detailed marketing manual in which the uses and dangers of Alanap are explained in detail, trusting to the distributor to warn any grower known to contemplate use so early in the season. Surely the original defendant, a chemical company, should not recommend and sell to an unsuspecting grower a product without explaining the dangers of which it had knowledge. The grower trusted E-Z Flo which in turn relied on warm, dry weather in March.

The record fails to disclose any factual basis which would justify the court in requiring the manufacturer (who gave notice) to reimburse the distributor (who failed to give notice), which failure in all likelihood caused the plaintiff's loss. In a somewhat similar case, the Supreme Court of Mississippi held the manufacturer was not liable to the distributor. *E. I. Du Pont De Nemours & Co. v. Ladner, supra.* This is not a case involving the sale of food or drink for human consumption which requires a high degree of responsibility on the part of the packager to the consumer. *Terry v. Bottling Co.,* 263 N.C. 1, 138 S.E. 2d 753. The manufacturer's implied warranty is that the product is merchantable. Uniform Commercial Code, G.S. 25-2-314-315. The product here involved met the requirement of merchantability. The caution against an out of the ordinary use does not render it nonmerchantable.

The decision of the Court of Appeals holding the manufacturer liable to the distributor is without support in the record. The decision of the Court of Appeals in that respect is

Reversed.