487 F.2d 485
 James W. DENNY, Administrator of the Estate of James N.
Denny, by Roger L. Smith, Ancillary Administrator of the
Estate of James N. Denny, to his own use and to the use of
Insurance Company of North America, Appellant,
v.
SEABOARD LACQUER, INC., Appellee.
 No. 72-1832.
 United States Court of Appeals,
Fourth Circuit.
 Resubmitted Sept. 5, 1973.
Decided Nov. 20, 1973.
 
 Oliver B. Dickins, Jr., Nashville, Tenn. (Abraham L. Adler, Baltimore, Md., and Moe Levine, New York City, on brief), for appellant.
 Barrett W. Freedlander, Baltimore, Md. (Robert H. Williams, Jr., Raymond F. Altman and Niles, Barton & Wilmer, Baltimore, Md., on brief), for appellee.
 Before WINTER, RUSSELL, and WIDENER, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Plaintiff-appellant, James W. Denny, is the administrator of the estate of James N. Denny (hereinafter Denny) who was killed as a result of an explosion which occurred while Denny was using a quantity of floor sealer which was manufactured by defendant-appellee, Seaboard Lacquer, Inc. (hereinafter Seaboard). In the court below, Seaboard moved for summary judgment, which motion was granted as against Denny but not against other plaintiffs with which we are not concerned in this appeal. For the purposes of disposing of the motion, Seaboard conceded the truth of the factual allegations favorable to Denny. Those facts may be summarized as follows: Denny was a floor finisher by vocation. At the time of the accident, he was engaged in applying a quantity of Seaboard floor sealer to a house which was near completion in Mt. Hope, Alabama. The house was being constructed by Jones Lumber Company, a Tennessee Corporation which builds houses in several states, including Alabama. It is not clear whether Denny worked directly for Jones or for one Strange, a subcontractor of Jones, but the important point is that Denny was using the product in the course of his calling and the product was manufactured by Seaboard.
 
 
 2
 Denny and two other workers, Wood and Cagle, slept in the house the night before the accident. They had the house closed up due to the cold January weather and they used an electric heater in the bedroom in which they slept. Early in the morning, Denny and Wood arose and went into the kitchen. Denny went into the kitchen first, and, when Wood came in, Denny was having coffee. Denny left the kitchen with a quantity of floor sealer and went toward the front bedroom to begin work. As Denny passed the back bedroom, he rapped on the door to awaken Cagle, who was still sleeping. Denny then went into the front bedroom and began work, and Cagle joined Wood in the kitchen.
 
 
 3
 When Cagle left the back bedroom, he left the door open and the electric heater on. The door to the front bedroom, in which Denny was working, was closed, although Denny probably had a window open. Cagle and Wood were sitting in the kitchen while Denny was working; approximately twenty minutes from the time Cagle woke up and about five minutes from the time Cagle entered the kitchen, he and Wood heard a loud "holler" from Denny. So intense was the heat from the combustion of the floor sealer that Wood and Cagle could not open the door to get out. Wood crashed through a window to escape, and Cagle has no memory as to how he and Denny got out of the house. Wood and Cagle, though severely burned, survived. Denny died two days later.
 
 
 4
 Of course, it may never be known for certain what occasioned the combustion of the floor sealer. The circumstances certainly point to the open faced, hot coil electric heater in the adjacent bedroom. Denny's administrator, Wood and Cagle sued Seaboard, and the suits were consolidated. Denny alleged causes of action grounded in negligence, strict liability in tort, implied warranty and wanton conduct. Following a hearing on defendant's motion for summary judgment, the trial court granted defendant's motion as against Denny. The district court ruled that Alabama law would govern the substantive aspects of the case. The parties have accepted this ruling on appeal. The district court also necessarily ruled, and Denny conceded, that Alabama courts do not recognize the theory of strict liability in tort, to which Denny originally took no exception here.[1] The court stated that Wood and Cagle had stated good causes of action in negligence but that Denny could not maintain a cause of action under the Alabama wrongful death act for negligence. The court construed the Alabama wrongful death act as requiring gross negligence or wanton disregard of the consequences by the defendant before an action could be maintained. The court further stated, with reference to gross negligence or wanton disregard of the consequences, "it is quite clear that the Plaintiffs cannot prove these facts and the Defendant would be entitled to summary judgment in the Denny case." The trial court also rejected Denny's implied warranty cause of action under the Uniform Commercial Code (Alabama Code, Title 7A, Sec. 2-314) as stated in the complaint. We are thus faced with three issues on this appeal.
 
 
 5
 I. Whether the trial court correctly ruled that Alabama law does not recognize ordinary negligence as giving rise to an action for wrongful death?
 
 
 6
 II. Whether a breach of implied warranty will support a wrongful death action under Alabama law?
 
 
 7
 III. Whether the court erred in ruling on motion for summary judgment that defendant's conduct could not, as a matter of law, be deemed wanton or gross negligence?
 
 
 8
 An added problem is whether plaintiff should not be allowed to proceed on the theory of strict liability in tort in view of Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973).I
 
 
 9
 It is familiar learning that, at common law, there was no cause of action for wrongful death. The action died with the person. It is only by virtue of the widespread adoption of wrongful death statutes following Lord Campbell's Act that such actions are maintainable. Alabama's statute is:
 
 
 10
 "Title 7 Sec. 123:
 
 
 11
 "Action for wrongful act, omission, or negligence causing death.
 
 
 12
 "A personal representative may maintain an action, and recover such damages as the jury may assess in a court of competent jurisdiction within the state of Alabama, and not elsewhere for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death. Such action shall not abate by the death of the defendant, but may be revived against his personal representative; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for the wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. Such action must be brought within two years from and after the death of the testator or intestate."
 
 
 13
 On its face, the statute allows a death action to be brought for "the wrongful act, omission, or negligence of any person . . . or corporation. . . ." The language "wrongful act, omission, or negligence" appears three times in the body of the act. And it is plainly stated that as a condition for the administrator's bringing the suit, it must appear that the deceased could have sued for such wrongful act, omission, or negligence had death not occurred. It is clear enough from the statute that, so long as the wrongful act, omission, or negligence is alleged and the deceased could have sued but for his death, the statute recognizes the action. Seaboard contends, however, that the Alabama courts have construed the statute to mean that no action may be brought unless the complaint alleges gross negligence or willful and wanton misconduct. It says that the conduct necessary to come within the purview of the act is the same as that necessary to support an award of punitive damages.
 
 
 14
 The Alabama wrongful death statute has been in effect since 1872. Seaboard cites no Alabama death cases, and we can find none, which state or hold that negligence will not support a death action. In fact, the Alabama reports are replete with cases illustrating that counts alleging simple or ordinary negligence are sufficient to state a cause of action for wrongful death. E.g., Loveman v. Birmingham Ry., Light & Power Co, 149 Ala. 515, 43 So. 411 (1907); Kansas City, Mobile & Birmingham Ry. Co. v. Sanders, 98 Ala. 293, 13 So. 57 (1892); Richmond & Danville Ry. Co. v. Freeman, 97 Ala. 289, 11 So. 800 (1892); Hubbard v. Thrasher, 26 Ala.App. 252, 157 So. 680 (1934); Brown v. Southeastern Greyhound Lines, 255 Ala. 308, 51 So.2d 524 (1951); Powell v. Atlantic Coast Line Ry. Co., 274 Ala. 533, 150 So.2d 179 (1962). The Supreme Court of Alabama has approved instructions in death cases which charge the jury that defendant may be liable for the failure to use ordinary care. E. g., Brown, supra, instruction No. 28.
 
 
 15
 While we think it clear that Denny was entitled to have his action proceed on the negligence count, the source of confusion in this case is understandable. The Alabama statute is quite unlike the usual wrongful death act. The life expectancy of decedent at the time of death, his earning capacity, his pain and suffering before death, and the mental anguish of his survivors are all irrelevant considerations under Alabama law. The purpose of the act is not to compensate but to punish. The theory is to prevent homicides by punishing those who cause them. See, generally, Bell v. Riley Bus Lines, 257 Ala. 120, 57 So.2d 612, 615 (1952); Randle v. Birmingham Ry., Light & Power Co., 169 Ala. 314, 53 So. 918 (1910); Richmond & Danville Ry. Co., supra. Thus, the Alabama act is sometimes called a punitive statute and the damages are frequently referred to as punitive. However, damages under the statute are not punitive in the usual legal sense of that word because Alabama allows their recovery in death cases for less than the wanton or malicious conduct, which is the ordinary standard for the imposition of punitive or exemplary damages. Although the use of the word punitive in Alabama jurisprudence, with respect to awards under the death statute, may be unfortunate, we observe that no State is without peculiarities in its law which, while familiar to the native bar, seem strange to outsiders. In any event, as early as 1892, in the case of Richmond & Danville Ry. Co. v. Freeman, 97 Ala. 289, 11 So. 800, the Alabama Supreme Court had referred to such damages as punitive, yet allowed their recovery for negligence. In the Richmond case, the court fully discussed this precise point and spelled out what it meant by punitive damages under the statute and explained the distinction between those damages and exemplary damages in the ordinary legal sense. See Richmond, p. 802; Randle, 53 So. p. 920.
 
 
 16
 Another source of confusion is the rule in Alabama that a contributorily negligent plaintiff may nevertheless recover from a defendant who is guilty of wanton conduct. For this reason, most of the reported death cases in Alabama include at least one count of willful or wanton misconduct on the part of the defendant. E.g., Brown, supra, 51 So.2d at 526, 527.
 
 
 17
 Our rejection of Seaboard's attempt to equate damages under the wrongful death act to exemplary damages, in the traditional sense, is based on other factors. If appellee were correct in its theory that only willful and wanton misconduct may support an award under the death statute, there might be no place in a wrongful death action for the defense of contributory negligence. Yet, in such cases in Alabama, a defendant may plead defenses of contributory negligence, self defense, and assumption of the risk. Breed v. Atlanta, Birmingham & Chattanooga Ry. Co., 241 Ala. 640, 4 So.2d 315 (1941). Appellee's theory that damages are punitive in the traditional sense is also inconsistent with Alabama law under which an award under the wrongful death act requires no compensatory damages to support a punitive award. E.g., Louisville-Nashville Ry. Co. v. Street, 164 Ala. 155, 51 So. 306 (1910). Punitive damages in the traditional sense normally require a supporting award of compensatory damages. See, generally, 22 Am.Jur. (2d) Damages Sec. 241.
 
 
 18
 Appellee conceded on oral argument that it knew of no Alabama wrongful death case to support its position, but rather it depends upon guest passenger cases which, by statute, require proof of the breach of a higher degree of care, Lankford v. Mong, 283 Ala. 24, 214 So.2d 301, and non-death cases in which Alabama follows the general rule that punitive damages, in the ordinary sense of the term, may be awarded for wantonness or such indifference as to amount to intentional wrongdoing. Alabama Great Southern Ry. Co. v. Hill, 93 Ala. 514, 9 So. 722 (1891).
 
 
 19
 We are unable to find, and our attention has not been invited to, Alabama law, either directly on point or by way of analogy, which supports the construction of the Alabama statute urged upon us by Seaboard. In a diversity case where the law of the controlling jurisdiction is clear, our duty under Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is to apply it. We are of opinion that the statutory and case law of Alabama allows a wrongful death action to proceed upon the theory of negligence, and that the trial court's ruling to the contrary was in error.[2]
 
 II
 
 20
 Appellant contends that Alabama law permits recovery in death actions for breach of implied warranty. The trial court mentioned this cause of action only to state that it was essentially the same as negligence. We must look to the provisions of the Uniform Commercial Code as adopted by Alabama, and the decisions of the Alabama courts to determine whether a death action may be maintained under an implied warranty count. Alabama adopted the UCC, with modifications, in 1966, to apply to transactions entered into and events occurring after midnight, December 31, 1966. Alabama Code, Title 7A, Sec. 10-101. Since the accident in this case occurred on January 19, 1969, the code provisions apply. Section 2-314 of Title 7A of the Alabama Code imposes on a seller of goods an implied warranty of merchantability. The complaint in this case alleges a breach of that warranty and that such breach was the proximate cause of Denny's death.
 
 
 21
 In Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973), the Supreme Court of Alabama decided that a cause of action for wrongful death under Alabama law may not arise on account of breach of implied warranty of fitness under the Uniform Commercial Code as there enacted. In that case, the claim against the dealer and General Motors was that, on account of breach of implied warranty of fitness, plaintiff's decedent was killed in an accident occurring September 5, 1968. The car was purchased new from the dealer on September 30, 1967.
 
 
 22
 The facts of the instant case and Geohagan are indistinguishable so far as they concern the application of the substantive law of Alabama. Accordingly, applying Alabama law, Erie Railroad, supra, we are of opinion the district court was correct in its view that this case may not be maintained as a death action on account of breach of implied warranty of fitness under the Uniform Commercial Code.
 
 III
 
 23
 The complaint in this case alleged that Seaboard was guilty of wanton conduct. On defendant's motion for summary judgment, the trial court ruled against plaintiff Denny on the issue of wantonness. The court stated:
 
 
 24
 "This, then, is almost a manslaughter rule, a gross negligence rule. Clearly the record here does not show that under any circumstances the Defendant could be held liable under such a standard. Indeed, the question with reference to general negligence is a relatively close one but insofar as gross negligence or wanton disregard of the consequences, it is quite clear that the Plaintiffs cannot prove these facts and Defendant would be entitled to summary judgment in the Denny case."
 
 
 25
 This ruling meant several things for Denny. In the first place, it meant he had no cause of action at all because the trial court was of opinion that neither ordinary negligence nor breach of implied warranty would support a wrongful death action. And, even if ordinary negligence would support a death action, if defendant proved contributory negligence, plaintiff could not prevail because in that event plaintiff would have to show conduct on the part of the defendant amounting to wantonness.
 
 
 26
 We are of opinion that the trial court erred in granting summary judgment on the issue of wantonness. We believe that an affidavit filed by plaintiff's expert precluded the necessary conclusion under Rule 56 that there is no genuine issue as to any material fact. See, generally, Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The affidavit of Dr. James A. Church recites that Church tested a quantity of the same kind of sealer that Denny was using at the time of the explosion. Church says, among other things, that:
 
 
 27
 "Indeed so hazardous are the fumes, even in low concentrations, and so difficult is it to diffuse these fumes to a sufficiently low concentration level that the only adequate manner of diffusion would be through the use of some sort of forced ventilation, with precautions of course being necessary to assure the absence of ignition sources in such a system. Any ventilation short of this would be insufficient.
 
 
 28
 "Moreover, the danger involved could and should have been recognized by any competent practicing chemist, or any knowledgable person familiar with paint and lacquer manufacture, and injuries should have been anticipated and were reasonably certain to occur in the use of such a hazardous material."
 
 
 29
 Dr. Church concluded that the material was so hazardous that it should not even be on the market. Seaboard argues that what it should have known is insufficient to support a finding of wanton conduct under Alabama law. It says that only one other incident involving the product at issue herein is reported and in that case Seaboard won the lawsuit; Denny himself had used the product at least fifty times without unusual consequence; the product was adequately labeled; and the applicable United States Government agency approved the product for sale to the general public. While the Church affidavit may certainly have been subject to strong attack, we believe it sufficient to preclude summary judgment in defendant's favor on this point without further factual development.
 
 
 30
 Under Alabama law, causes of action predicated upon wanton or willful misconduct turn on the state of mind of the actor with which the act or omission complained of is done or omitted. Ex parte McNeil, 184 Ala. 420, 63 So. 992, 993 (1913). Where state of mind is at issue, summary disposition should be sparingly used. See Poller, supra, 368 U.S. at 473, 82 S.Ct. 486.
 
 
 31
 In Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716, 720 (1967), wantonness is defined as follows:
 
 
 32
 "In wantonness, the party doing the act or failing to act, is conscious of his conduct, and without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury."
 
 
 33
 While Denny may find proof of wantonness by Seaboard difficult, we think summary rejection of his contention was inappropriate.
 
 
 34
 We express no opinion as to the merits of whether or not Seaboard's alleged acts or omissions may have been wanton. Neither do we express an opinion as to whether or not such should be submitted to a jury. But, in cases such as this in which affidavits filed in support of, and opposed to, summary judgment, indicate there may be a dispute of material fact at the trial, we do apply the rule as previously stated in this court in Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4th Cir. 1951), and Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228, 231 (4th Cir. 1955):
 
 
 35
 "Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented."IV
 
 
 36
 As a part of his additional memorandum filed at our instance (see n. 2), Denny now presents an additional problem.
 
 
 37
 In Geohagan, in the concurring opinion of Mr. Justice Maddox, is found the statement that an action for wrongful death will lie in Alabama under the ". . . tort doctrine of strict liability as spelled out in the Restatement (Second) of Torts, Sec. 402A (1965) . . . ." 279 So.2d at 442.
 
 
 38
 Denny's complaint did include a count based on strict liability in tort as set forth in Sec. 402A. At a hearing in the district court, it was conceded that the doctrine of strict liability in tort under Sec. 402A did not apply in Alabama, and the district court noted this concession in its opinion.
 
 
 39
 Denny now asks us to direct the district court to allow him to proceed on the theory of strict tort liability, although the point has not been heretofore raised in this appeal.
 
 
 40
 While we must decline at this time to direct the district court to allow Denny to proceed on the theory of strict liability in tort, especially because that court has not before considered the point other than in passing by way of noting the concession, we do believe that the point should be raised in the district court on remand.
 
 
 41
 Because the facts here appear to indicate the concession was improvidently made, plaintiff having no advance knowledge of the concurring opinion in Geohagan, it may very well be that he is entitled to relief under FRCP 60(b)(1) (if timely), or 60(b)(6), or both. We are confident the district court will give consideration to a proper motion on remand, and there is no indication it will exercise its discretion unwisely.
 
 
 42
 In summary, we are of opinion that (1) ordinary negligence is recognized as giving rise to a cause of action under the Alabama wrongful death statute, (2) breach of implied warranty is not recognized as giving rise to a cause of action under the Alabama wrongful death statute, (3) the district court erred in granting summary judgment on the issue of wantonness, and (4) the district court ought to give consideration to a motion (as to the merits of which we now express no opinion) seeking leave to proceed on the theory of strict liability in tort.
 
 
 43
 The case must be remanded for proceedings not inconsistent with this opinion.
 
 
 44
 Affirmed in part, reversed in part, and remanded.
 
 
 
 [1]
 See part IV of this opinion
 
 
 [2]
 This opinion was originally filed July 9, 1973. Following the original filing, the court learned of the case of Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973), then unpublished, which had been decided in May, and in which a rehearing had been denied on July 5th of this year. The court procured a copy of the opinion from the Alabama Supreme Court. On July 25, 1973, having received no motion for a rehearing, but before the mandate had issued, on our own motion we ordered that issuance of the mandate in this case be stayed and requested supplemental memoranda in view of Geohagan. Such memoranda have now been filed, and the case was resubmitted in September