**Delmar Ray COOK, Appellant,**

v.

**BAKER EQUIPMENT ENGINEERING COMPANY, INC., Appellee.**

**No. 77–1555.**

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1978.

Decided Sept. 12, 1978.

W. H. McElwee and William C. Warden, Jr., North Wilkesboro, N. C. (McElwee, Hall & McElwee, North Wilkesboro, N. C., on brief), for appellant.

William Kearns Davis, Winston-Salem, N. C. (Richard V. Bennett, Deal, Hutchins & Minor, Winston-Salem, N. C., on brief), for appellee.

Before BUTZNER, LAY,* and WIDENER, Circuit Judges.

LAY, Circuit Judge.

On June 2, 1970, Delmar Ray Cook, a citizen of North Carolina, while performing work from an aerial tower for an electrical contractor, suffered severe flash burns as he moved an uninsulated high voltage electrical line on a cross arm of a utility pole. Several high voltage lines were mounted at various heights on the pole. At the time of the accident, which took place in Greensboro, North Carolina, Cook was standing in a fiberglass reinforced plastic basket or bucket. The allegedly insulated bucket was truck-mounted and had a boom which could be extended 45 to 50 feet into the air. The accident occurred when the bucket came into contact with two of the high voltage lines creating a "phase to phase" (that is, from one line to another line) short circuit.

Cook brought suit in the federal district court in North Carolina against the Baker Equipment Engineering Company, a Virginia corporation, the manufacturer of the bucket, alleging negligence in the design and manufacture of the bucket, and failure to adequately test and inspect the unit. The defendant moved for summary judgment. Based upon pleadings, interrogatories and depositions filed by the parties, the district court, the Honorable Hiram H. Ward presiding, found there was no genuine issue as to any material fact and that, as a matter of law, plaintiff was was not entitled to recover. We must disagree; we reverse and remand for a plenary trial.

The district court found that the defendant manufacturer, while representing that the bucket provided a high degree of protection to workmen from electrical current passing from phase to ground, specifically warned that the bucket would not provide protection from current passing from phase to phase. The trial judge then concluded that, in light of the defendant's specific warning concerning phase to phase protec-

---

* Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

tion, the danger was open and obvious to Cook, an experienced workman, and therefore granted summary judgment for the defendant.[1]

Plaintiff's claim is based primarily on an alleged inherently unsafe design. He urges that, unknown to him, the bucket in which he was working contained metal screws attaching a fiberglass inspection plate to the boom. The metal screws were hidden, he asserts, due to their being covered by a gel coating with which the entire fiberglass bucket was covered. It is plaintiff's theory that the phase to phase short circuit occurred when the line which Cook was moving contacted the metal mounting bracket of the bucket while at the same time the metal screws contacted another energized line. This theory was corroborated by the deposition of W. E. Bondurant, an individual experienced in electrical contracting. Thus, plaintiff urges that although there was obvious metal hardware on the bucket he was not aware of any other conductive material on the bucket which might set up a phase to phase short circuit. Plaintiff asserts that he was not knowingly operating the bucket in any manner warned against.

The evidence submitted shows that Cook used the bucket for work it was designed to do. Furthermore, the evidence indicated that the manufacturer had knowledge that the bucket would be used to work on or near multiple energized lines above the ground. There is no proof that Cook was aware that a short circuit could be set up by contact with any portion of the bucket other than between exposed metal parts. It is one thing to say that Cook knew that a short circuit *could* occur, it is completely another argument, however, to say that Cook knew in view of the manner in which he was using the bucket that a phase to phase circuit *would* occur. The manufacturer gave no warning that the metal screws used were concealed or that they penetrated the fiberglass in such a manner that they could complete an electrical circuit with the bucket's mounting bracket.

In almost an identical situation as presented here the Colorado Court of Appeals affirmed a wrongful death award against the manufacturer of an aerial boom device where a workman was electrocuted. In *Good v. A. B. Chance Co.,* 565 P.2d 217 (Colo.App.1977), the accident occurred when current from an energized line passed or arced through brass bonding screws concealed on the lower face of the bucket. The primary thrust of the appellate opinion relates to evidentiary issues; however, the court observed that a decal warning of the danger from the brass bonding screw was available prior to the accident. In commenting on this fact the Colorado Court of Appeals observed:

> The evidence demonstrated pre-existing knowledge of the danger inherent in the product, the feasibility of giving a warning, and established a duty to warn users of the defect.

*Id.* at 223.

Although in the present record there is no evidence of such a decal, the *Good* case shows a judicial recognition that the design of a similar product was sufficient to raise a jury question as to whether the bucket was intrinsically unsafe without specific warning.

Even though *Good* was a strict liability case and North Carolina has not yet specifically adopted strict liability, under North Carolina products law negligence "may be found over an area quite as broad as his [the defendant's] whole activity in preparing and selling the product." *Corprew v. Geigy Chemical Corp.,* 271 N.C. 485, 157 S.E.2d 98, 102–03 (1967), *quoting* W. Prosser, Law of Torts 665 (3d ed. 1964). *See also* Hodge, *Products Liability: The State of the Law in North Carolina,* 8 Wake Forest L.Rev. 481, 483–84 (1972). Thus, we are satisfied under a negligence count, assuming the proof alleged here, a jury could easily reach a result similar to that rendered in the *Good* case.

When dealing with a summary judgment this court has observed that:

---

1. The district court relied upon North Carolina law which holds that a manufacturer is not liable for injury to a user by reason of any condition which is plainly observable. *See Douglas v. W. C. Mallison & Son,* 265 N.C. 362, 144 S.E.2d 138 (1965).

At this stage of the proceedings, review is limited to determining whether the case should have been decided summarily or submitted to the jury. There is no controversy about the historical facts, but that does not end the inquiry. The critical question is whether a genuine issue exists as to the inferences or conclusions that may properly be drawn from the evidence. The inferences must be viewed in the light most favorable to the appellant, and the judgment must be reversed if "inferences contrary to those drawn by the trial court might be permissible." *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). *Salmon v. Parke, Davis & Co.,* 520 F.2d 1359, 1362 (4th Cir. 1975) (citations omitted).

In no other area of the law does the lay jury play a more *definitive* role than in a negligence case when it is required to determine whether an actor's conduct is prudent and reasonable under the given circumstances. Along with questions of foreseeability and proximate cause, equating the actor's conduct with reasonable care often depends on factual resolution of conflicting inferences. The inferences to be drawn from the proofs turn on the degree of corroboration mixed with the overall skill of persuasion demonstrated by the respective adversaries. Such issues readily lend themselves to policy determinations based upon the general mores of the community. With this understanding, it should be readily perceived that a summary proceeding which denies the parties the right of trial by jury and which attempts to decide the case on abbreviated proof should rarely be used in negligence suits. As Judge Craven observed in *Spaulding v. Ads-Anker Data Systems—Midwest, Inc.,* 498 F.2d 517, 518 n. 1 (4th Cir. 1974):

Summary judgment is particularly inappropriate in negligence actions, as Chief Judge Parker recognized in *Pierce v. Ford Motor Co.,* 190 F.2d 910 (4th Cir.), cert. denied, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951):

It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented. 190 F.2d at 915.

*See also Salmon v. Parke, Davis & Co., supra; Denny v. Seaboard Lacquer, Inc.,* 487 F.2d 485, 491 (4th Cir. 1973); *Williams v. Chick,* 373 F.2d 330, 331–32 (8th Cir. 1967); 6 Pt. 2 Moore's Federal Practice ¶ 56.17[42] (2d ed. 1976).

Based on the record before us, a sufficient factual dispute exists at least as to the following issues: (a) whether the metal screws attaching the inspection plate to the boom were rendered non-obvious by applying the gel-coat over the screws; (b) whether such a condition created an unreasonably dangerous situation in light of the known or foreseeable uses of the bucket; and (c) whether the unelaborated warning in the operator's manual that the bucket would not provide phase to phase protection was adequate in view of the known or foreseeable industrial uses of the bucket. *See* 1 L. Frumer & M. Friedman, Products Liability § 8.05[1], at 186.6(6) (1977).

In vacating the grant of summary judgment we specifically note that we do not in any way attempt to prejudge the sufficiency of the evidence. At a summary judgment stage a full exposition of the evidence has not yet taken place. It may be that plaintiff's proof as to the circumstances of the accident will not be sufficient to establish a prima facie claim. These issues, however, await trial on the merits.

The summary judgment for the defendant is vacated and the cause remanded for trial.

*REVERSED AND REMANDED.*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

As well as the majority, I respect the rule that summary judgment should not be lightly granted, and especially in a negligence case: however, where the law makes clear the futility of proceeding and no factual dispute exists, the purposes of the rule should not prevent the court from entering judgment then and there; indeed, they encourage it. Where, as here, there is no factual dispute, the defendant should not be required to go to trial. In the words of Rule 56(c), "[t]he judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact . . . ."

The essential error in the majority opinion is in the statement upon which all of the opinion must be based, that the aerial bucket was being "used for work it was designed to do." Such statement I think is without factual support in the record.

While it may be true that the manufacturer realized that the aerial bucket would be used at or near multiple energized lines above the ground, the specific use which Cook was making of the bucket involved the positioning of the upper arm and its bucket extension across two energized electrical lines, thereby creating a phase to phase connection. In a warning found in the operator's manual accompanying the tower, the user was admonished specifically that the bucket would not "provide phase to phase protection." The following quotation from the manual should be dispositive in the case provided the warning was adequate:

"While the fiberglass boom provides a high degree of electrical insulation between the bucket and the truck, there are several things it will *NOT* do.

1. Provide phase to phase protection.

\* \* \* \* \* \*

Each of these dangers must be recognized and guarded against." (Emphasis in original).

While the majority treats the specific direction not to do what Cook was doing as nothing more than an "unelaborated warning", and does not quote the warning in the opinion, I think the warning is such as to prevent the plaintiff from recovery for any negligence of the defendant here in question.

This warning clearly shows that the aerial tower was not designed to provide phase to phase protection while working aloft. Even if the fact is as the plaintiff claims, that he thought the bucket would provide such protection, his belief was grounded on surmise, and he admits that he had never read the express disclaimer found in the instruction booklet, a copy of which was kept in the glove compartment of the truck. Such belief may not alter the physical facts concerning the functional construction and design of the product, to transform it from a device designed to provide an aerial platform insulated from current running from wires it touches to the ground, into a platform designed to be safe in situations including phase to phase contact. Thus, while the tower was designed for use around high tension wires, it was not designed for the use to which Cook put it, and Cook was specifically advised of that fact in the manual supplied with the product.

Keeping in mind that Cook was explicitly and emphatically warned that the bucket would not provide phase to phase insulation, I turn to the law in North Carolina with respect to the liability of a manufacturer which incorporates the *Restatement of the Law of Torts*, § 388:

"one who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows, or from the facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

(b) and has no reason to believe that those persons for whose use the chattel

is supplied will realize its dangerous condition; *and*

(c) fails to exercise reasonable care to inform them of its dangerous condition *or* of facts which make it likely to be so." (Italics added).

Section 388 is quoted as stating the duty of a manufacturer of a chattel in *Swaney v. Peden Steel Co.*, 259 N.C. 531, 131 S.E.2d 601, at 607 (1963). See also *Stegall v. Catawba Oil Co. of N. C.*, 260 N.C. 459, 133 S.E.2d 138 (1963).

Therefore, because the defendant admittedly did warn of the danger of using the aerial tower in the very manner in which Cook used it, the duty to warn him being stated in § 388 in the disjunctive, the liability of the defendant must depend upon whether the warning was adequate under the law. If the warning were legally inadequate, the defendant may be liable; but if the defendant adequately informed users of the dangerous condition, there is no ground for liability.

The majority states that the adequacy of the warning is a disputed factual issue which would prevent the district court from granting summary judgment. I believe that under the case law in our circuit the warning was sufficient as a matter of law. Because liability would ultimately be predicated on the adequacy or inadequacy of the warning, we may assume, for the purpose of argument in this context, that the screws were non-obvious and a dangerous latent condition existed. Summary judgment would even then be proper if there can be no dispute as to the adequacy of the warning because compliance with the duty to warn is stated in the conjunctive in § 388.

In *Brown v. General Motors Corp.*, 355 F.2d 814 (4th Cir. 1966), cert. den. 388 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 600 (1967), a case not mentioned in the majority opinion, we decided a case under South Carolina law which, for the purposes of the law concerning warning given by the manufacturer, should be so persuasive upon us here as to

be followed. No significant fact in the *Brown* case and our case is different as might adversely affect the defendant. The *Brown* case was decided under § 388 of the *Restatement of Torts, 2d*, the law which applies here,[1] as shown above, and no North Carolina decision I have found or which has been cited by the majority states any different rule.

In *Brown*, a bulldozer mechanic sued General Motors, the manufacturer of the bulldozer. The plaintiff was injured when he asked a fellow employee to press the starter button on the bulldozer while it was in gear. The bulldozer started, injuring the plaintiff, instead of just turning a grease fitting as intended. Among the instructions in the operator's manual supplied by General Motors were the following: Under "Driving Instructions" a direction that "The lever must be in neutral in order to start the engine"; and yet under "Driving Instructions" appeared "NORMAL STARTING . . . Shift the transmission into neutral"; and under "TRANSMISSION OPERATING HINTS" was "Do not shift range selector into neutral except when starting engine. Leave in gear at all other times"; and under "SAFETY" as something an operator should "always" do was the caution to "Make sure no one is working on unit before starting engine or moving tractor." p. 817.

Not only did the court hold that language, the substance of which I have just quoted, fulfilled the requirement of adequacy of warning, it specifically held that "In supplying a handbook for the use of a purchaser, the plaintiff's employer, G.M. fully responded to its duty to provide instructions or to warn, even assuming the equipment was a dangerous instrumentality." p. 820. The court further specifically held that "If the handbook was not shown to Brown . . . by . . . [his] employer, who apparently deemed it superfluous as a warning, this was no fault of the defendant." p. 820.

---

1. The only difference in the *Restatement* and *Restatement Second* so far as the duty to warn is concerned is the substitution of "dangerous" in *Restatement 2d* for "so" in the original version as the last word of the section.

The court in *Brown* set aside a jury verdict for the plaintiff, thus holding as a matter of law that the delivery of the handbook was sufficient, that the language used was sufficient, and that the fact that the employee may not have read the book made no difference. The only difference between *Brown* and our case is that the language used in the warning given by the manufacturer here is more specific so that a judgment for the defendant in *Brown* requires a judgment for the defendant in this case.

Because I think it is clear that there may be no liability because of an adequate warning, I will not discuss in detail the majority opinion, but there are two points which I believe deserve comment.

The district court, it seems clear to me, based its opinion on two grounds rather than only one, as the majority opinion may be read. The first was that the "metal hardware near the end of the boom was plainly visible and should have provided adequate warning. . . ." App. 82. The second was ". . . *further* in light of the defendant's specific warning concerning the lack of phase to phase protection . . . ." App. 82. (Italics added).

Finally, the holding in *Corprew*, as distinguished from the quoted discussion in that case which is relied upon by the majority opinion for a broad reading of North Carolina negligence law, is entirely consistent with my views, and I think inconsistent with the majority opinion. In that case, a farmer sued a manufacturer of a chemical weed killer. The farmer had used the defendant's Atrazine 20G to kill weeds in his 1964 corn crop. The only warning on the bag was that the defendant ". . . did not recommend that the crop of corn for which [weed] product was used be followed the same year with another planting of corn or followed its initial use by a crop or crops of small grain the same year." p. 100. The farmer planted peanuts and soybeans,

in 1965, the following year, and alleged these crops were damaged by the use of the Atrazine 20G the year before. The court held the quoted warning was insufficient as it reversed a judgment for defendant on demurrer, the substance of the complaint having been that the defendant *"should have warned . . .* [the plaintiff] of the potential bad effects of Atrazine 20G upon succeeding crops other than corn and small grain in time to have prevented any damage to his 1965 crops, *and that defendant negligently failed to so warn him."* p. 107. (Italics added). A comparison of *Corprew*, in which a plainly inadequate warning was involved, with our case, in which there is admittedly an emphasized warning of the danger of the specific use which caused the injury, leads me to the conclusion that *Corprew*, far from supporting the majority, supports a finding of no liability. *Wilson v. E–Z Flo Chemical Co.*, 281 N.C. 506, 189 S.E.2d 221 (1972), for example, in a warranty case in which the court stated that an "ample warning" was "Do not use ALANAP [a herbicide] on vine crops of any kind when growing conditions are very adverse; namely, in early spring when the weather is cold and wet." p. 224. I think the warning given in our case is indistinguishable from that given in *Wilson*.[2]

Thus, I believe that, under circuit precedent under § 388 of the *Restatement*, including § 388 of *Restatement 2d*, the specific warning given in this case was adequate as a matter of law. I also believe that under North Carolina law, which controls, the specific warning given was adequate as a matter of law. It follows that I believe the judgment for the defendant should be affirmed.

---

**2.** Compare the remarkably similar phrasing of the duty in *Wilson* (with which the court stated the manufacturer complied) with that stated in § 388. Indeed, the statement of the duty in *Wilson* was taken from *Corprew*.

"The supplier of a chattel (especially food or drink for human consumption) is subject to

liability for injury in its use by another when the supplier knows or should know that its use is or is likely to be dangerous and when there is no reason to believe that the user will realize this, if, further, he (the supplier) fails to use reasonable care to warn." *Wilson* at p. 225.